LARRY MCKENZIE *vs.* BRIGHAM & WOMEN'S
HOSPITAL & others.[1]

Suffolk. April 4, 1989. — July 20, 1989.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Practice, Civil,* Summary judgment, Appeal. *Anti-Discrimination Law,*
Prima facie case, Burden of proof. *Limitations, Statute of.*

On a claim under G. L. c. 151B by a former hospital employee alleging that
he had been discharged because of racial bias on the part of the hospital,
the judge properly granted summary judgment for the hospital where,
even assuming that materials submitted by the hospital established a
prima facie case of racial discrimination under c. 151B, those materials
also established a lawful explanation for the treatment accorded the
plaintiff, and where nothing in the record created a genuine issue of
material fact as to whether the hospital's asserted reason for terminating
the plaintiff's employment was merely a pretext. [434-438]

Where a plaintiff's claim of racial discrimination in violation of 42 U.S.C.
§ 1981 (1982) was substantially identical to an additional claim against
one of the defendants under G. L. c. 151B, with regard to which the
plaintiff had failed to establish a genuine issue of material fact bearing
on the lawfulness of the defendant's conduct toward the plaintiff, this
court concluded that the § 1981 claim, like the c. 151B claim, should
be disposed of by summary judgment for the defendants. [438]

CIVIL ACTION commenced in the Superior Court Department
on July 22, 1983.

A motion to dismiss one count was heard by *William G.
Young,* J.; a motion for summary judgment on the remaining
counts was heard by *John L. Murphy, Jr.,* J.; and entry of
final judgment was ordered by *John F. Moriarty,* J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

[1] George Kaye, Joy Lennardtz, John Doe, and Richard Roe. A stipulation
of dismissal was filed as to defendants Lennardtz, Doe, and Roe. Brigham
and Women's Hospital and George Kaye are parties to this appeal.

*Winston Kendall* for the plaintiff.

*Frank E. Reardon* for the defendants.

O'CONNOR, J. On September 15, 1981, narcotics were discovered missing from the dialysis unit at Brigham and Women's Hospital (hospital). On September 29, the plaintiff, a black man, was suspended from his job as an escort messenger in that unit. He was never reinstated.

The plaintiff instituted an action in the Superior Court alleging that he had been discharged because of racial bias on the part of the hospital, George Kaye, who was the hospital's personnel director, and the three other defendants named in note 1, *supra*. On a motion of the defendants hospital and Kaye, a judge dismissed four of the eight counts. One of the dismissed counts alleged that the defendants had terminated the plaintiff's employment because of his race and color in violation of 42 U.S.C. § 1981 (1982). The judge, citing precedent from the United States Court of Appeals for the First Circuit, ruled that that claim was barred by the six-month statute of limitations "borrowed" from G. L. c. 151B, § 5 (1986 ed.), for application to § 1981 actions.

The hospital and Kaye subsequently moved for summary judgment on the remaining four counts. Another judge allowed that motion as to three counts, including a claim that the hospital had violated G. L. c. 151B, § 4 (1) (1986 ed.), by employment discrimination based on race and color. The parties then stipulated to the dismissal of the remaining count and to the dismissal of all counts against the three defendants other than the hospital and Kaye. Final judgment entered for the defendants, and the plaintiff filed a timely appeal to the Appeals Court. We transferred the case here on our own initiative.

On appeal, the plaintiff challenges only the grant of summary judgment for the hospital on the G. L. c. 151B claim, and the dismissal of the § 1981 claim against the hospital and Kaye. We affirm the grant of summary judgment on the G. L. c. 151B claim. Also, because the § 1981 claim is substantially identical to the c. 151B claim, we hold that the § 1981 claim, like the c. 151B claim, should be disposed of by summary judgment for the defendants. In view of our holding, we do not consider

whether the judge was correct in dismissing that claim as untimely.[2]

We first address the c. 151B claim. "Rule 56 (c) of the Massachusetts Rules of Civil Procedure, 365 Mass. 824 (1974), provides that summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' 'The party moving for summary judgment assumes the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue, even if he would have no burden on an issue if the case were to go to trial.' *Pederson* v. *Time, Inc.*, [404 Mass.] 14, 17 (1989). *Attorney Gen.* v. *Bailey*, 386 Mass. 367, 371, cert. denied sub nom. *Bailey* v. *Bellotti*, 459 U.S. 970 (1982)." *Leavitt* v. *Mizner*, 404 Mass. 81, 88 (1989). Therefore, we must look at the materials available to the judge for summary judgment purposes to determine whether, as a matter of law, the defendants have affirmatively shown that the plaintiff cannot establish that the hospital violated G. L. c. 151B, § 4 (1).

In a G. L. c. 151B racial discrimination case, the plaintiff has the burden of persuading the fact finder that the employer intentionally discriminated against him or her on account of race, *Lewis* v. *Area II Homecare for Senior Citizens, Inc.*, 397 Mass. 761, 765 (1986), *Wheelock College* v. *Massachusetts Comm'n Against Discrimination*, 371 Mass. 130, 139 (1976), and that the defendant would not have taken the action taken "but for" the unlawful discrimination. *Lewis, supra* at 770. *Smith College* v. *Massachusetts Comm'n Against Discrimination*, 376 Mass. 221, 227 n.8 (1978). The plaintiff "may meet that burden by establishing an unanswered prima facie case of discrimination." *Wheelock College, supra* at 139. The plaintiff may establish a prima facie case, for example, by

---

[2] The record does not show that the plaintiff exhausted a claim with the Massachusetts Commission Against Discrimination. However, the defendants have not argued that the Superior Court judge should not have exercised jurisdiction over this case.

showing that he belongs to a racial minority, that he was employed by the defendant in a position for which he was qualified, that he was suspended or terminated, and that the defendant employer thereafter sought to fill that position with a similar qualified person. See *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802 (1973); *Wheelock College, supra* at 135 n.5.

If a plaintiff establishes a prima facie case, but the defendant answers it by advancing lawful grounds for the action taken and produces evidence of underlying facts in support thereof, the plaintiff, in order to prevail, must persuade the fact finder by a fair preponderance of the evidence that the defendant's asserted reasons were not the real reasons for the action. *Smith College, supra* at 229-230. *Wheelock College, supra* at 139. "The reasons given for a decision may be unsound or even absurd, but if they are not discriminatory and if the plaintiff does not prove they are pretexts, the plaintiff cannot prevail." *Lewis, supra* at 766.

In support of the motion for summary judgment, the hospital submitted materials which included its answers to the plaintiff's interrogatories and excerpts from the deposition of George Kaye. These materials present the following sequence of events: Sometime after 8 P.M. on the evening of September 14, 1981, a drug cabinet in the hospital's dialysis unit was forcibly broken open, and narcotics were removed. The theft was discovered the next morning. The hospital's security department was notified of the theft and investigated the matter. The security department notified the Boston police who also investigated the incident.

The security department spoke to Barrington Johnson, a housekeeper who had been assigned to clean the dialysis unit on the evening of September 14. Johnson, who is a black man, told the investigators that, at 9 P.M. on September 14, he was approached by a young black man wearing a scrub suit, who asked to borrow a set of keys to the dialysis unit. Johnson had previously seen the man in the area, and lent him the keys with the understanding that the man needed to return some packages to the dialysis unit. The man returned the keys to Johnson fifteen minutes later.

Johnson told the investigators that he entered the dialysis unit through the main door at 9:30 P.M. The door was unlocked, although normally it was locked. He saw the same black man sitting in the unit. It appeared to Johnson that the individual had been sleeping in one of the rooms within the dialysis unit.

On the basis of this information, the security department interviewed the plaintiff. The plaintiff initially told the investigators that, at approximately 8 P.M. on September 14, he had transported a patient from the dialysis unit to another part of the hospital. He then completed his day's work by returning an oxygen tank to the dialysis unit. He left the dialysis unit in the company of a nurse, who locked the doors behind him, and he did not return that evening. He then went to a locker room in a different part of the hospital where he slept on an old mattress until 7 A.M. the following morning when he reported for work. When he was informed that someone claimed to have seen him in the dialysis unit that night, the plaintiff stated that the informant must be lying. The plaintiff answered "no" when asked if he had anything further to say.

Sometime later, the plaintiff expressed a desire to speak to the hospital security investigators again. This time, he told the investigators a different story about his activity on the evening of September 14. He stated that, after leaving the dialysis unit, he went to the engineering department and visited a friend, Carlton Alexander, with whom he spoke until 11 P.M. He again said that he did not return to the dialysis unit. The hospital investigators questioned Alexander, who confirmed seeing the plaintiff very briefly on the evening of September 14, but denied spending time in conversation with him.

Based on the report that the plaintiff had been seen in the dialysis unit on the evening of the crime, and the lack of substantiation of the plaintiff's alibi, the hospital suspended the plaintiff on September 29, 1981, pending completion of the investigation. That was the first time the hospital had ever disciplined the plaintiff. In October, the hospital learned that the Boston police department had obtained fingerprints from the drug cabinet. Over the next several weeks, Kaye informed the plaintiff that, if he were to submit to fingerprinting and were

cleared, he would be reinstated. Kaye sent the plaintiff a letter on January 28, 1982, notifying him again that if he were cleared by the Boston police department after fingerprinting he would be reinstated. The letter went on to say that, if the plaintiff did not express to Kaye a willingness to cooperate with the investigation by February 5, he would be terminated. The plaintiff failed to speak to Kaye or to submit his fingerprints to the police.

Even if we assume, as the plaintiff argues, that the materials submitted by the hospital established a prima facie case of racial discrimination under G. L. c. 151B, those materials also established "a lawful explanation for the treatment accorded the plaintiff," *Lewis, supra* at 765, thus triggering the plaintiff's burden to show that the explanation was a pretext. "[E]vidence which may be relevant to the plaintiff's showing of pretext may include [disparate] application of a certain criterion to employees of different races; the employer's general practice and policies concerning employment of racial minorities; and the employer's treatment of the plaintiff during [his] employment" (citations omitted). *Lewis, supra* at 767. However, the plaintiff points to nothing in the record, and we find nothing, that would create a genuine issue of material fact as to whether the hospital's asserted reason for terminating the plaintiff's employment was merely a pretext. We have inspected the record closely for material supportive of the plaintiff's assertion that a genuine issue of fact exists, including an excerpt from the plaintiff's deposition contained in the hospital's memorandum in support of the motion for summary judgment. That material states, as a basis for the plaintiff's conclusion that the hospital had fired him because of his race, that some black technicians, who had worked in the dialysis unit when the plaintiff had, had been "laid off around that same era." The plaintiff also stated in interrogatory answers that "[t]here were other persons of Caucasian extraction who had access to the Dialysis Department. To my knowledge, no white person was investigated or suspended for the alleged theft of narcotics." Such statements by the plaintiff would be inadmissible at trial as hearsay, and therefore are "unacceptable to defeat summary

judgment." *Madsen* v. *Erwin*, 395 Mass. 715, 721 (1985). Mass. R. Civ. P. 56 (e), 365 Mass. 824 (1974). We conclude that the plaintiff has not responded to the material submitted by the hospital in a way that establishes a genuine issue of material fact bearing on the lawfulness of the hospital's conduct toward the plaintiff. Therefore, we hold that the judge properly granted summary judgment for the hospital on the plaintiff's G. L. c. 151B claim.

The plaintiff's next contention is that the judge erred in dismissing his claim against the hospital and Kaye under 42 U.S.C. § 1981 as time-barred by the six-month limitation of actions provision in G. L. c. 151B, § 5. The plaintiff argues that the three-year limitations period provided by G. L. c. 260, § 2A (1988 ed.), for complaints alleging personal injury is the proper limitations period to apply in Massachusetts to § 1981 actions. We need not decide which limitations period is the appropriate one for the commencement of actions under 42 U.S.C. § 1981. The plaintiff's claims under G. L. c. 151B, and 42 U.S.C. § 1981, are substantially identical, and the plaintiff's burden with respect to each is "to present evidence sufficient to raise a genuine issue of fact as to whether [the defendants'] stated reason [for employment termination] was only a pretext for intentional discrimination," *Oliver* v. *Digital Equip. Corp.*, 846 F.2d 103, 109 (1st Cir. 1988). Therefore, the plaintiff's failure to present such evidence is fatal to his claim regardless which limitations period applies. Were the plaintiff to have brought the Federal claim as a separate action subsequent to a final judgment on the c. 151B claim, the doctrine of collateral estoppel would bar the second claim. *Bricker* v. *Crane*, 468 F.2d 1228, 1231-1232 (1st Cir. 1972), cert. denied, 410 U.S. 930 (1973). There is no reason to reach a different result merely because both claims were originally brought as part of the same action. See *Ritter* v. *Mount St. Mary's College*, 814 F.2d 986, 991-992 (4th Cir.), cert. denied, 484 U.S. 913 (1987). Therefore, no purpose would be served by reinstating the § 1981 claim.

*Judgment affirmed.*