DIANNE M. BRUNNER vs. STONE & WEBSTER
ENGINEERING CORPORATION & another.[1]

Norfolk. March 3, 1992. - November 19, 1992.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Practice, Civil*, Summary judgment, Appeal. *Anti-Discrimination Law*,
Prima facie case, Burden of proof, Termination of employment, Sex.

On a claim under G. L. c. 151B by a former employee of an engineering
firm alleging that she had been discharged because of her sex and in
retaliation for her having complained of sexual harassment and dis-
crimination, the judge properly granted summary judgment for the en-
gineering firm where, even assuming that the plaintiff had demon-
strated a prima facie case of sex discrimination under c. 151B, the
engineering firm produced evidence that it had legitimate, nondiscrimi-
natory reasons for discharging the plaintiff, and where the record
demonstrated that the plaintiff would have no reasonable expectation of
proving at trial that the engineering firm's asserted reasons for dis-
charging the plaintiff were merely pretexts. [699-700, 703-705]
Where this court determined, on the record of summary judgment pro-
ceedings, that a plaintiff had no reasonable expectation of proving un-
lawful discrimination against her employer in violation of G. L. c.
151B, and this determination was dispositive of a separate claim alleg-
ing that plaintiff's supervisor had unlawfully interfered with her con-
tractual relations with her employer, this court concluded that sum-
mary judgment on the unlawful interference claim was correctly
ordered for the defendant supervisor. [705-706]

CIVIL ACTION commenced in the Superior Court Depart-
ment on April 18, 1989.

The case was heard by *Robert W. Banks*, J., on a motion
for summary judgment.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

---

[1]Robert C. Wiesel.

*Frederick T. Golder* for the plaintiff.

*David J. Kerman* for the defendants.

O'CONNOR, J. In a seven-count complaint, the plaintiff alleges in count I that Stone & Webster Engineering Corporation (Stone & Webster) discharged her from employment because of her sex and in retaliation for her having complained of sexual harassment and discrimination in violation of G. L. c. 151B (1990 ed.). In count VII, the plaintiff alleges that the defendant Wiesel intentionally interfered with her contractual relations with Stone & Webster. The defendants moved for summary judgment on all seven counts and that motion was allowed in full. The plaintiff appealed from the grant of summary judgment on counts I, II, III, and VII, and the Appeals Court, in an unpublished memorandum and order, reversed the summary judgment on counts I and VII. The Appeals Court affirmed as to counts II and III. 31 Mass. App. Ct. 1113 (1991). We allowed the defendants' application for further appellate review with respect to counts I (G. L. c. 151B against Stone & Webster) and VII (interference with contract against Wiesel). We hold that the Superior Court judge properly granted summary judgment to the defendants on counts I and VII. We affirm the judgment of the Superior Court.

General Laws c. 151B, § 4 (1990 ed.), provides in pertinent part: "It shall be an unlawful practice: 1. For an employer . . . because of the . . . sex . . . of any individual . . . to discharge from employment such individual . . . unless based upon a bona fide occupational qualification." In a c. 151B case involving an assertion of sexual discrimination in employment, the plaintiff has the burden of persuading the fact finder that the employer intentionally discriminated against him or her on account of sex, and that, but for the discrimination, the employer would not have taken the complained-of action. *McKenzie* v. *Brigham & Women's Hosp.*, 405 Mass. 432, 434 (1989). *Lewis* v. *Area II Homecare for Senior Citizens, Inc.*, 397 Mass. 761, 765 (1986). See *Smith College* v. *Massachusetts Comm'n Against Discrimination*, 376 Mass. 221, 227 n.8 (1978); *Wheelock College* v. *Massachusetts*

*Comm'n Against Discrimination*, 371 Mass. 130, 139 (1976). The plaintiff may meet his or her burden of proof "by establishing an unanswered prima facie case of discrimination." *McKenzie* v. *Brigham & Women's Hosp.*, *supra* at 434, quoting *Wheelock College* v. *Massachusetts Comm'n Against Discrimination*, *supra* at 139. A plaintiff would clearly establish a prima facie case, for example, by showing that she is a woman whom the employer discharged despite her qualifications, and that the employer thereafter filled that position, or attempted to fill it, with a man with similar qualifications. "If a plaintiff establishes a prima facie case, but the defendant [employer] answers it by advancing lawful grounds for the action taken and produces evidence of underlying facts in support thereof, the plaintiff, in order to prevail, must persuade the fact finder by a fair preponderance of the evidence that the defendant's asserted reasons were not the real reasons for the action. *Smith College, supra* at 229-230. *Wheelock College, supra* at 139." *McKenzie, supra* at 435.

In support of their motion for summary judgment, the defendants submitted portions of the deposition testimony of the plaintiff and of Robert Doneski, supervisor of Stone & Webster's graphic arts group to which the plaintiff was assigned. The defendants also submitted an affidavit of the defendant Wiesel, chief engineer of Stone & Webster's structural division, to whom Doneski reported. In addition, the record contains the plaintiff's answers to interrogatories that had been propounded by a third defendant, a coworker who is no longer a party to this case. The uncontradicted portions of those materials present the facts we set forth below.

The plaintiff was first employed by Stone & Webster in 1970 as a drafter. She received several promotions and had been a senior graphic designer in the graphic arts group for six years when her employment was terminated in July, 1988. She was supervised by several tiers of management. The defendant Wiesel, as the chief engineer of Stone & Webster's structural division, was one of the plaintiff's supervisors. From mid-1985 until the plaintiff's layoff, the plaintiff

was also supervised by Robert Doneski, who was the supervisor of the graphic arts group. Doneski reported to Wiesel. Mario Rubio-Ospina was the lead senior graphic designer and was in charge of assigning and receiving the plaintiff's work.

In 1974, the plaintiff was denied a promotion and was told that it was because she did not have children and a mortgage to support. The plaintiff pursued the issue and was promoted. Once, the plaintiff and a female coworker overheard two male employees discussing a pornographic movie. When that incident was reported, Stone & Webster addressed the situation through a supervisor. In 1973 and again in 1986, male coworkers made vulgar sexually-oriented statements to the plaintiff. Rubio-Ospina assigned menial work to the plaintiff and did so in a confusing and demeaning manner. In 1988, Rubio-Ospina attempted to persuade the plaintiff to alter her time cards and, when she refused, he stated loudly that she was "not a real help" to the group. On that same day, Rubio-Ospina threw a hard-boiled egg at the plaintiff and held up her work and asked, "[W]hich cow did this job?" In June, 1983, someone put razor blades in and on the plaintiff's desk, and in September, 1983, her wedding picture was missing from her desk and was later found in her locked desk drawer. The plaintiff reported some of these incidents to Stone & Webster's management personnel, who responded in a manner designed to be corrective.

The plaintiff lacked training on certain automated equipment. Three men and two women in the graphic arts group, not including the plaintiff, were trained on the Autographix machine. Some of the graphic arts group personnel, but not the plaintiff, were trained in the use of the Oxbery and computer graphics machines, which training the plaintiff declined to pursue.

During the 1980's, the graphic arts group of Stone & Webster suffered a significant decline in its workload. Also, during that period, the group increased its use of automated equipment. As a result, the workforce of the graphic arts group was reduced. The company laid off six employees in

1984, two in 1986, and three in 1987. As the workload continued to decline in 1988, Stone & Webster laid off three more graphic designers in July, 1988. They were the plaintiff, another woman, and a man. Five men and two women were retained. Of the seven graphic designers retained, two, a man and a woman, had more seniority than the plaintiff. Of the remaining five, four were men and one was a woman. They had less seniority than the plaintiff. Of these five employees with less seniority than the plaintiff, three of the men and one woman had received specialized training in automated equipment. One man, F.M. Van Wart, had not. The three individuals who were laid off had not received specialized training.

Supervisor Doneski testified in a deposition that the plaintiff had never been rated less than "effective" in her formal performance evaluations, that there was nothing wrong with the quality of her work, and that other company personnel from time to time had commended the plaintiff's work. He also testified that, while at one time he had felt that the plaintiff's productivity was high, it had subsequently slipped, and that the plaintiff's initiative was "average."

Wiesel and Doneski met and discussed who would be laid off. They appraised the capability, technical expertise, job knowledge, initiative, versatility, productivity, and potential contributions of each graphics group member. They decided to retain all the group members who had specialized training in automated equipment. They also decided to retain Van Wart following their discussion of Van Wart's "high capability and excellent work." They laid off all the others.

On appeal, Stone & Webster says that it laid off its employees because of a shortage of work, and selected the plaintiff for layoff because she lacked the training of, or was a less capable performer than, those individuals with less seniority who were retained. The plaintiff argues that Stone & Webster's claim is a mere pretext, and that the reasons she was laid off were that she was a woman and she had complained of sexual harassment and discrimination on the job.

Ordinarily, as we have suggested early in this opinion, the first question would be whether the plaintiff has established a prima facie case of discrimination. However, in this case, Stone & Webster has not argued that the plaintiff has failed to prove a prima facie case and that therefore Stone & Webster is entitled to summary judgment. Instead, Stone & Webster's argument is that it has furnished credible evidence that its reasons for discharging the plaintiff were nondiscriminatory, that, as a result, in accordance with the analytical framework of shifting burdens set forth above, the plaintiff will have the burden of proving at trial that Stone & Webster's stated reasons were no more than pretexts, and that it is apparent from the materials submitted to the judge that the plaintiff will be unable to provide that proof. In those circumstances, contends Stone & Webster, it is entitled to summary judgment. See *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 711-716 (1991).

Because Stone & Webster does not argue that the plaintiff has failed to establish a prima facie case for summary judgment purposes, we assume, without deciding, that a prima facie case has been demonstrated. It is clear, too, that Stone & Webster has produced evidence that it had legitimate, nondiscriminatory reasons for laying off the plaintiff. Therefore, we address the question whether the depositions, affidavit, and answers to interrogatories discussed above demonstrate that the plaintiff will be unable to prove at trial that Stone & Webster's stated reasons were pretexts. We are satisfied that the materials show that the plaintiff will be unable to prevail at trial, and that the judge was correct in ordering summary judgment for Stone & Webster.

The plaintiff supports her contention that Stone & Webster's stated reasons were pretexts by asserting that (1) she was an "excellent," not merely average, worker; (2) she was deliberately denied training on the automated equipment; and (3) she had been the victim of several incidents of sexual harassment by fellow workers and had repeatedly complained to her supervisors. We reject the plaintiff's first argument because nothing in the materials submitted pursuant to

Mass. R. Civ. P. 56, 365 Mass. 824 (1974), refutes the evidence that, when the productivity levels, technical expertise, and skills of all the graphic arts group employees were compared, a good faith judgment was made by those with the responsibility to decide that the plaintiff was less qualified for the job than those who were retained. Nothing in the record suggests that gender-specific factors were used in evaluating the job performances of the several employees. See *McKenzie v. Brigham & Women's Hosp.*, 405 Mass. 432, 437 (1989); *Lewis* v. *Area II Homecare for Senior Citizens, Inc.*, 397 Mass. 761, 767-768 (1986).

The plaintiff's second argument is that Stone & Webster's assertion that the plaintiff was less qualified for continued employment because she was untrained in the use of automated equipment was a pretext because Stone & Webster had denied her repeated requests for such training. Nothing in the record shows that the plaintiff's discharge was discriminatory. Furthermore, nothing in the record contradicts the fact, set forth in Doneski's deposition, that the plaintiff declined to continue training on the Oxbery machine after a week of working in the photography room, and that the plaintiff turned down an opportunity to be trained on the computer graphics machine. The record does not show that, if this case were to go to trial, there would likely be a genuine issue concerning whether Stone & Webster unlawfully denied the plaintiff's request for training and then relied on her lack of training to dismiss her.

We have set forth in our statement of the uncontroverted facts a series of incidents of harassment of the plaintiff by coworkers during her eighteen years of employment. We point out that these incidents did not directly involve Doneski or Wiesel, the Stone & Webster supervisory personnel who ultimately made the determination to lay off the plaintiff. See *Medina-Munoz* v. *R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 10 (1st Cir. 1990) ("The biases of one who neither makes nor influences the challenged personnel decisions are not probative in an employment discrimination case"). Furthermore, the summary judgment materials show that, when the plain-

tiff reported such incidents to management personnel, Stone & Webster supervisors immediately intervened and took corrective action.

We conclude that the defendant has shown by material described in Mass. R. Civ. P. 56 (c), unmet by countervailing materials, that the plaintiff has no reasonable expectation of proving an essential element of her case, namely that, but for her sex, Stone & Webster would not have included her in the layoff. *McKenzie* v. *Brigham & Women's Hosp., supra* at 434. *Smith College* v. *Massachusetts Comm'n Against Discrimination, supra* at 227 n.8. See *Kourouvacilis* v. *General Motors Corp., supra* at 716. In coming to that conclusion, we recognize that "where motive, intent, or other state of mind questions are at issue, summary judgment is often inappropriate." *Flesner* v. *Technical Communication Corp.*, 410 Mass. 805, 809 (1991). That is not to say, however, that, in such cases, summary judgment is always inappropriate. See *McKenzie* v. *Brigham & Women's Hosp., supra* at 438 (racial discrimination); *Lewis* v. *Area II Homecare for Senior Citizens, Inc., supra* at 770 (racial discrimination); *Godbout* v. *Cousens*, 396 Mass. 254, 258-259, 261-263, 264-265 (1985) (defamation, intentional infliction of emotional distress). We are content that, in this case, summary judgment is appropriate.

We turn briefly to count VII, the plaintiff's claim that the defendant Wiesel intentionally interfered with her employment contract with Stone & Webster. In order to prevail on that claim at trial, the plaintiff would have to prove, among other things, that Wiesel's actions in terminating her employment were the product of improper motive or means. *G.S. Enters., Inc.* v. *Falmouth Marine, Inc.*, 410 Mass. 262, 272 (1991). The crux of the plaintiff's claim is that she was fired at Wiesel's direction for discriminatory reasons and thus Wiesel was acting with an improper motive. Our determination that the Mass. R. Civ. P. 56 (c) materials demonstrate that the plaintiff has no reasonable expectation of proving unlawful discrimination against Stone & Webster is dispositive of the claim against Wiesel also. The record shows that

the plaintiff cannot reasonably expect to show that, in terminating the plaintiff's employment, Wiesel acted with an improper motive. The judge in the Superior Court correctly ordered summary judgment for the defendants on counts I and VII.

*Judgment affirmed.*