Cowin, J.
Plaintiff John Alunkal (Alunkal) brings this action under G.L.c. 15 IB and G.L.c. 93, §102 alleging discriminatory job actions taken by his employer, defendant Codex Corporation d/b/a Motorola/Codex (Codex). Alunkal complains that Codex (1) failed to promote him and (2) transferred him to a non-managerial position because of his sex, color and national origin. Codex now moves for summary judgment, arguing: (1) that Alunkal has no cause of action under G.L.c. 93, §102 for claims arising in the course of employment: (2) that Alunkal’s claims of discrimination based on color were not alleged before the Massachusetts Commission Against Discrimination (MCAD) and are therefore precluded from this action: (3) that events prior to December 31, 1991 (the date six months prior to Alunkal’s filing of a complaint with the MCAD) are time barred; (4) that Alunkal has failed to establish a prima facie case of discrimination; and (5) that Alunkal has failed to establish that the reasons Codex gave for his transfer were pretexts for unlawful discrimination. For the reasons stated herein, defendant’s motion for summary judgment is granted in part and denied in part.
BACKGROUND
The Court treats the following facts drawn from the submitted depositions, affidavits, and answers to interrogatories as true for purposes of this summary judgment motion only. Conclusory statements, factual allegations not based on personal knowledge, and general denials contained in the affidavits have been disregarded. Madsen v. Erwin, 395 Mass. 715, 719 (1985). Some disputed facts have been included for background and their disputed nature noted.
Alunkal is a South Asian male who was born in India and who identifies himself as non-white. Since 1980, he has worked for Codex and has been promoted a number of times. He currently holds the position of senior engineer.
In 1983, Alunkal became manager of the Diagnostic Development Group. In 1987, he was promoted to grade level CE21 (engineering manager II). The next promotional step for him would have been to CE23 (director).
Between October 1989 and December 1991, Al-unkal reported to Gordon Long (Long), Vice-President of Development Support. Alunkal had a good working relationship with Long and believed him to be a good manager. Long, in turn, reported to Vice President and General Manager John Thibeault (Thibeault).
In February of 1990, Long evaluated Alunkal and gave him a “3” (Expected) rating out of a possible “5.” Prior to this time, Alunkal had always received “4s” (Exceeding Expected). Alunkal complained to Long about this evaluation. Alunkal claims that Long told him that he did in fact deserve a “4” on the 1990 evaluation and that Long *593 would make it up to him. Long denies this allegation. In April 1990, Lynn Duffet (Duffet), a white, female employee under Alunkal’s supervision, resigned from her position with Codex. Duffet complained to Ken Miller (Miller), a white, male general manager at Codex, about Alunkal’s management style. Miller indicated to Long, Alunkal’s supervisor, that he was concerned that Alunkal was responsible for Duffet’s resignation. Long discussed these concerns with John Thibeault and Vice President Jack Stiles. Alunkal spoke to Miller about the Duffet incident on April 18, 1990. Alunkal alleges that Long told him that his reputation had been spoiled by the incident. Long does not recall this statement and states that he told Al-unkal that it was he, Long, who controlled promotional decisions relevant to Alunkal and that the Duffet matter did not affect Alunkal’s promotional prospects. Alunkal alleges that after Thibeault left Codex in 1991, Long told him that he should be glad about Thibeault’s departure because Thibeault held something against Alunkal for the incident involving Lynn Duffet. Long denies having made such a statement. Finally, Al-unkal alleges that Vice President Jack Stiles told him that he knew of the Duffet incident and that everyone deserves a second chance.
In early 1991, Long told Alunkal that in order to be promoted, he would have to successfully complete the “corporate test strategy project.” In considering whether to recommend Alunkal for a promotion, Long would have also considered whether Alunkal’s performance rating went from a “3” to a “4” based on Alunkal’s effectiveness in various areas of his job. In February of 1991, Long reevaluated Alunkal and again gave him a “3” out of a possible “5,” finding no improvement since Alunkal’s previous evaluation.
During 1990 and 1991, the plaintiff delivered all diagnostics on time and encountered no major problems in his employment. In May 1991, the president of Codex wrote a letter to Alunkal, complimenting him for the good work he had contributed to certain Codex products.
In November and December 1991, Long allegedly told Alunkal that he would be promoted in February 1992 and that he would receive a “4" rating on his yearly evaluation. Long denies that he told Alunkal he would be promoted. In December 1991, Long left Codex. Alunkal alleges that the corporate test strategy project was completed in December 1991. Long states that the project had not been finished when he left Codex in December 1991.
In 1991, three white, male managers in other groups were promoted to director positions. In addition, a male from Pakistan and a male from India were also promoted to directorships.
Long’s recommendation was a prerequisite to any promotion Alunkal might have received within his department at Codex, but Long could not unilaterally promote Alunkal. Long never recommended Alunkal for a promotion to the next level position of director. Long maintains that he did not feel strongly enough about Alunkal’s performance level to recommend him for a promotion.
In January of 1992, Codex undertook a reorganization which eliminated eleven percent of its work force. Prior to the reorganization, Alunkal’s responsibilities were, in part, supervisory. As a part of the reorganization, Codex management determined that Alunkal’s supervisory responsibilities should be reassigned, Al-unkal should be transferred, and his position should be eliminated. On January 6, 1992, Alunkal was transferred to the position of consulting engineer. Alunkal’s salary and grade level did not change as a result of the transfer. Other managers who held the same rank as Alunkal and who were Caucasian were also impacted by the reorganization.
On April 30, 1992, Alunkal met with Rudy De-Michelle, Senior Vice President of Manufacturing, and David Brumby of Human Resources. Alunkal was told at this meeting that he was young and could recover the years he had lost as a result of the Lynn Duffet incident.
Prior to the reorganization, Alunkal managed the Diagnostic Group. Each of the approximately eighteen members of that department reported either to Alunkal or to one of the two other managers within the department, Souhail Jaroung (Jaroung) and Dennis Mello. These two other managers also reported to Alunkal. In the reorganization, Alunkal’s position was classified as an “administrative managerial” position. Jaroung’s position was classified as a “working manager” position. Administrative managerial positions were eliminated in the reorganization, and, at that point, Jaroung, who is Syrian, white and male, became the only manager in the Diagnostic Group. In June 1992, after the reorganization had been implemented, Jaroung was promoted. His title remained that of “working manager,” but he received a grade increase within that position.[1]
On June 30, 1992, Alunkal filed a charge of discrimination with the MCAD in connection with the two employment actions (failure to promote and transfer) discussed above.[2] Alunkal, who went to the MCAD without the aid of counsel, told the intake worker that he had been discriminated against on the basis of his race, color, gender and national origin. The intake worker checked off gender, national origin and national ancestry as the bases of the alleged discrimination on the MCAD charge form.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively demonstrating that there is no triable issue and that the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989).
*594 Claims Under G.L.c. 93, §102
For the reasons stated in Titcomb v. Boston Safe Deposit and Trust Company, Inc. and The Boston Company, Inc., Suffolk Superior Court Action No. 92-6585 at 7-11 (Memorandum and Order dated June 9, 1993, Sosman, J.), G.L.c. 151B precludes any remedy under G.L.c. 93, §102 for employment-related discrimination. The defendant’s motion for summary judgment is therefore granted as to Claim II[3] of the plaintiffs complaint.[4]
Claims of Discrimination Based on Color
Codex argues that Alunkal has no standing or legal right to assert a discrimination claim based on color because his complaint to the MCAD does not state color as one of the categories forming the basis of the alleged discrimination. Alunkal has sworn by means of affidavit that he complained of discrimination based on color, race, national origin and gender when filing his charge with the MCAD on June 30, 1992. The MCAD intake worker made note on the charge form of discrimination based on gender, national origin and ancestry. Alunkal has sworn that he believed that the categories checked off by the MCAD intake worker covered all of his claims of discrimination, including color.
The distinctions between race, color, national origin, and ancestry are not always clear, and the identification of a particular individual may not readily conform to these categories. The sometimes elusive nature of these categories is also apparent in the attempt to identify the basis of a particular act of discrimination. For example, the national origin discrimination complaint of a nonwhite person from Ethiopia might in some way also be seen as a charge of color-based discrimination. In light of the remedial nature of G.L.c. 151B, it would be unfair to preclude Alunkal’s color-based claim simply because the MCAD intake worker may have omitted to check a box on the charge form. Further, it is by no means clear that national origin or ancestry may not include color under circumstances such as the present. Alunkal is therefore not barred from arguing that the discriminatory actions alleged in his complaint and MCAD charge were based on his color.
Consideration of Events Occurring Prior to December 31, 1991
The defendant argues that Alunkal cannot use events occurring prior to December 31, 1991 to form the basis of his claim here. This date is six months prior to the date on which Alunkal filed his complaint with the MCAD. There is a six-month statute of limitations on complaints to the MCAD. G.L.c. 151B, §5; Cherella v. Phoenix Technologies Limited, 32 Mass.App.Ct. 919 (1992). A plaintiff may not resort to the courts with a complaint of discrimination within the jurisdiction of the MCAD unless timely complaint has been made to that agency. Id.
The acts of discrimination alleged in this action are the 1992 transfer of Alunkal and the on-going failure from 1991 to the present to promote Alunkal. The MCAD complaint was clearly timely as to the transfer. It was also timely as to the failure to promote because where, as here, a continuing violation is alleged, a complaint is timely filed even though the discriminatory action commenced more than six months prior to the complaint. Lynn Teachers Union, Local 1037 v. Massachusetts Commission Against Discrimination, 406 Mass. 515, 520 (1990).
Codex argues that the Duffet incident and events related to it were not the subject of a timely MCAD complaint and are therefore legally irrelevant to this case. However, it is Codex’s acts in transferring and failing to promote Alunkal, not these past events, which form the basis of this suit for the purpose of ascertaining timeliness. Inasmuch as the Duffet incident and related events Eire probative of discrimination in the personnel actions complained of, they are relevant to this case.
Prima Facie Case
Codex argues that it is entitled to summary judgment on the plaintiffs claims because Alunkal has not established a prima facie case of discrimination. In order to make out a claim under G.L.c. 151B, the plaintiff must initially establish a prima facie case of unlawful discrimination. Brunner v. Stone & Webster Engineering Corp., 413 Mass. 698, 700 (1992). Because the plaintiff will have the burden of demonstrating this prima facie case at trial, the defendant may prevail on summary judgment “by demonstrating that proof of [the prima facie case] is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); accord, Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
Alunkal can demonstrate a prima facie case of discrimination by showing that: (1) he belongs to a protected group; (2) he was qualified for and applied for a promotion [or was qualified to remain in his pre-transfer position]; (3) that he was considered for and was denied a promotion [or opposed a transfer to which he was subjected]; (4) and that other employees of similar qualifications who do not belong to the protected group were promoted [or were not transferred] at the time that the plaintiff was denied promotion [or was transferred]. Radvilas v. Stop & Shop, Inc., 18 Mass.App.Ct. 431, 439-40 (1984), citing Bundy v. Jackson, 641 F.2d 934, 951 (D.C.Cir. 1981) (emphasis added).[5] Demonstrating a prima facie case is not onerous. McKenzie v. Brigham & Women’s Hospital 405 Mass. 432 (1989).
The defendant first argues that Alunkal has failed to demonstrate his qualifications for a promotion. However, Alunkal has pointed to evidence demonstrating that: (1) Long and a later supervisor, Paul Pfuhl, found Alunkal to be technically strong; (2) Long assured Alunkal that he would receive a promotion; and (3) Alunkal always met or exceeded performance levels in the position he had held prior to the reorganization. Taking all inferences which can be drawn from the evidence in the plaintiffs favor, a jury could find that Alunkal was qualified for a promotion.
*595 The defendant next argues that the plaintiff cannot show that individuals outside the protected groups fared better than the plaintiff in terms of promotions or the reorganization. However, there is evidence from which a jury could find that during 1991 and 1992, white non-Indian employees were promoted to the position Alunkal sought (Director/CE23). Further, in regard to the transfer, there is, at a minimum, evidence that Jaroung, a white male, was, in effect, promoted during the implementation of the reorganization while Alunkal lost all of his management responsibilities.
The defendant has failed to demonstrate that the plaintiffs proof of a prima facie case is unlikely to be forthcoming at trial. Flesner, supra 410 Mass. at 809.
Ability to Show Pretext
Once the plaintiff has established a prima facie case, the defendant bears the burden of producing evidence that the job action complained of was taken for non-discriminatory reasons. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Here, the defendant has met its burden of production by maintaining that Alunkal was not qualified for a promotion and that AlunkaTs prior position was eliminated in the reorganization. Since the defendant has met its burden of production, the burden shifts back to the plaintiff to “persuade the fact-finder by a fair preponderance of the evidence that the defendant’s asserted reasons were not the real reasons for the action.” Brunner, 413 Mass. at 700. This burden-shifting scheme for demonstrating discrimination must be considered in the context of the moving and non-moving parties’ burdens at the summary judgment stage.
A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); accord, Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion.” Pederson, supra, 404 Mass. at 17. In the context of a G.L.c. 15 IB case, the defendant may prevail on a motion for summary judgment by “demonstratfing] that the plaintiff will be unable to prove at trial that [the employer’s] stated reasons were pretexts.” Brunner, 413 Mass. at 703.
This Court cannot say as a matter of law that Alunkal will be unable to prove at trial that Codex’s proffered reasons for its actions are pretextual. A jury could make such a finding based on the following evidence: the circumstances of the Duffet incident; discussions among Codex employees of the harmful effect of the Duffet incident on Alunkal’s reputation; unkept promises by Alunkal’s supervisor to promote him; and the promotion of Jaroung, a white, non-Indian, into a job which may be a de facto version of Alunkal’s pre-transfer position or the position to which he was attempting to be promoted. Further, as the credibility of the witnesses is at the heart of this case, summary judgment is especially inappropriate here.
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendant Codex Corporation’s motion for summary judgment is ALLOWED as to Claim II of the plaintiff John Alunkal’s complaint and is otherwise DENIED.

 There are insufficient facts in the record to establish the level to which Jaroung was promoted.

 A later personnel action, a demotion, is the subject of a second MCAD complaint and does not form a basis for this action.

 plaintiff uses the word “Claim” in his complaint.

 Because the plaintiffs claim is the subject of a timely charge with the MCAD, and the plaintiff may therefore bring his action under G.L.c. 151B, the G.L.c. 93, §102 claims appear to be superfluous.

 plaintiff argues that the highlighted portion of this last element is not a requirement of the prima facie case. See McKenzie v. Brigham & Women's Hospital, 405 Mass. 432, 434-35 (1989) (emphasis added) (setting out a prima facie case for termination in which the last element is simply “that the defendant employer thereafter sought to fill that position with a similar qualified person"); Wheelock College v. Massachusetts Commission Against Discrimination, 371 Mass. 130, 135 n. 5 (1976) (citing to the prima facie case set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), which has as its last element “that, after [plaintiffs] rejection, the position remained open and the employer continued to seek applications from persons of complainant’s qualifications"; Olivera v. Nestle Puerto Rico, Inc., 922 F.2d 43 (1st Cir. 1990) (setting out a prima facie case for termination in which the last element is that the plaintiff “was replaced by someone with qualifications similar to his own, thus showing a continued need by the employer for the same services and skills”); Herbert v. Mohawk Rubber Co., 872 F.2d 1104 (1st Cir. 1989). Because the plaintiff has shown that whites and non-Indians were promoted during the time he was seeking a promotion, the Court need not reach this issue.