Hely, J.
A.Counts Not In Dispute
In his Order of May 2, 1992, Judge Houston dismissed Count VI and all claims against the individual defendants. At the hearing on the present motion and in the plaintiffs opposition, the plaintiff waived all remaining counts except Count II and Count V.
B.Count II: Discrimination Based on Handicap Including Perceived Handicap
Count II presents a difficult question for the court on summary judgment, and I have struggled with it. The court must apply the summary judgment standards stated in Kourouvacilis v. General Motors Corp., 410 Mass. 706 (1991), and the employment discrimination principles summarized in Brunner v. Stone & Webster Engineering Corp., 413 Mass. 698, 699, 703-05 (1992). The court must also apply the definitions of “qualified handicapped person” and “handicap” found in G.L.c. 151B, §1 par. 16 and 17.
The plaintiff was hired by the defendant as a machinist on May 15, 1987. He had diabetes and high blood pressure at the time he was hired. In April 1988, he had triple bypass heart surgery. He returned to work for the defendant after a three-month recuperative period.
In August 1989, the defendant was considering changing health insurers. Richard Celata, Sr., the company president, had been discussing the matter with his insurance agent. The plaintiff testified at his deposition (26-27) that Mr. Celata, Sr. told him in the presence of the insurance agent and Richard Celata, Jr. that “you’re costing us money.” The plaintiff testified that Mr. Celata, Sr. said “we are trying to get new insurance. We can’t because of your handicaps.” Richard Celata, Sr. in his deposition (80) gave a significantly different version of the conversation that he said began with a joking reference by his son. When the plaintiff asked him about the remark, Richard Celata, Sr. “explained to him because of his heart problem that we have to wait a year before we can get insurance," referring to a change in insurers.
On October, 4,1989, Richard Celata, Sr. and Richard Celata, Jr. informed the defendant that his employment was terminated effective on October 21, 1989. Richard Celata, Sr. and Richard Celata, Jr. identified a number of wholly legitimate reasons for Richard, Sr.’s decision to terminate the plaintiff. These reasons included a chronic inability to produce a sufficient quantity of work within appropriate time assignments and complaints by fellow employees. They believed that the plaintiff caused disputes and frequent bickering among employees by conduct such as closing off the heat against the wishes of fellow employees and putting one employee against another. They also believed he took more days off than most employees.
Both parties have submitted copies of a one-page “Employee’s Personnel Record” for the plaintiff. This record shows that the plaintiffs ratings for quantify and attitude were “poor” for the 1987, 1988, and 1989 evaluations and that his attendance ratings for the same three evaluations were all “fair.” In the face of the rather solid evidence of legitimate reasons for the discharge, the plaintiffs version of the insurance conversation sounds like a stray remark that is weak beer to support his pretext claim. See Johansen v. NCR Comten, Inc., 30 Mass.App.Ct. 294, 302 (1991).
The court must restrain itself from making credibility judgments on summary judgment documents. I conclude that the plaintiffs deposition testimony about the insurance conversation and its timing in relation to the discharge is adequate (at least not an “absence of evidence”) to raise a genuine fact issue on the claim of unlawful motive. For this reason the summaryjudgment motion must be denied on Count II. Compare Brunner, supra and McKenzie v. Brigham & Women’s Hospital, 405 Mass. 432, 437 (1989), two employment discrimination cases where summaryjudgment was appropriate.
C.Count V: Negligent Infliction of Emotional Distress
According to the plaintiffs deposition, he experienced nervousness and his angina was bothering him two to three months after the termination. His first medical treatment for the symptoms allegedly caused by the termination did not come until July 1, 1990. Considering the pre-existing angina, the two to three months between the termination and the first symptoms, and the nine months between the termination and the first treatment, expert medical testimony would be necessary in this case to prove that the physical symptoms were caused by the termination. See Sullivan v. Boston Gas Co., 414 Mass. 129, 137-40 (1993). The summary judgment materials show an absence of expert medical evidence to support the plaintiffs claim that his physical symptoms were caused by the termination. The defendant is entitled to summaryjudgment on Count V for this reason.
*318 Apart from the lack of expert medical evidence on the cause of the physical symptoms, the court has also considered the more fundamental question of whether a cause of action for negligent infliction of emotional distress can be based on an employer’s termination of an employment at will. An employment at will is “terminable by either the employee or the employer without notice, for almost any reason or for no reason at all.” Wright v. Shriners Hospital for Children, 412 Mass. 469, 472 (1992). Upon a review of the Massachusetts cases on negligent infliction of emotional distress and employment at will, the court concludes that as a matter of law a termination of an employment at will cannot alone be the basis for a claim of negligent infliction of emotional distress. Cf. Payton v. Abbott Labs, 386 Mass. 540, 556-57 (1982); Sullivan v. Boston Gas Co., 414 Mass. 129, 133-38 (1993).
D. Order
The defendant’s motion for summary judgment is allowed on Counts I, III, IV and V. Count VI has already been dismissed.
The defendant’s motion for summary judgment is denied on Count II, and this is the only count that remains for trial.