Spurlock, J.
Pursuant to Rule 56 of the Massachusetts Rules of Civil Procedure, defendant The Federal Savings Bank (“Bank”) moves for summary judgment on all counts of plaintiff Ann S. Rosenberg’s Complaint. For the reasons set forth below, defendant’s motion is allowed.
BACKGROUND
All counts of the complaint filed by plaintiff Ann Salk Rosenberg (“Rosenberg”) stem from alleged workplace discrimination against Rosenberg in violation of Massachusetts General Laws Chapter 151B.[1] Rosenberg alleges that the Bank terminated' her employment because she suffers from multiple sclerosis; more specifically, Rosenberg alleges that the Bank feared that she would bring a claim for long-term disability benefits, and that this claim would injure the Bank financially.
In June 1989, Rosenberg spoke with James Masters (“Masters”), Manager of Commissioned Loan Originations at the Bank about an opportunity for employment at the Bank. During her preliminary employment discussions, Rosenberg told Masters that she had multiple sclerosis. Following preliminary discussions about Rosenberg’s possible employment at the Bank, Masters sent Rosenberg an unsigned Compensation Agreement which set forth the offered terms of employment. One of the terms was that Rosenberg’s life insurance and disability insurance would be determined on a base salary of $2,000 per month, or $24,000 annually.[2] The Compensation Agreement also stated that the arrangement would remain in effect until an earnings history was established as a base in the future.
The Compensation Agreement did not explicitly provide for any increase in benefits, and Masters informed Rosenberg that he could not change the terms of the Compensation Agreement. Rosenberg believed, however, based on her conversation with Masters, that at the end of her first year the long-term disability benefits would be calculated based upon her actual earnings. Rosenberg was particularly concerned about long-term disability benefits because she wanted to ensure that her standard of living would not drop if she became unable to work due to an increase in the severity of her condition. The Compensation Agreement was executed on July 13, 1989.
Rosenberg began working at the Bank as a Mortgage Originator on or about July 17, 1989. The Commissioned Loan Origination (“CLO”) Department was composed of Rosenberg and two other originators, neither of whom was handicapped. During her employment at the bank, Rosenberg performed well as a mortgage originator, exceeding quotas set by the Bank. During her first year of employment with the Bank, Rosenberg earned more than $95,000.
At the end of her first year of employment, Rosenberg asked the Bank’s Vice President of Human Resources, Patricia Vallely (“Vallely”) whether her insurance benefits were going to be increased on the one-year anniversary of her employment. Vallely met with other Bank officials to discuss the terms of Rosenberg’s agreement with the Bank. The Bank then began to conduct a review of compensation packages for commissioned loan originators at area banks. After completing this survey, the Bank decided not to increase Rosenberg’s benefit package. Rosenberg was displeased by the decision not to increase her benefits, and arranged a meeting with Bank president Richard Gallant to discuss a benefit increase. Gallant and Rosenberg were unable to come to an agreement, and the meeting ended badly.
In the Spring of 1991, a dispute arose between Rosenberg and the Bank on the issue of where Rosenberg was to be allowed to park her car. The parking area at the Bank’s main office in Waltham consists of an upper lot near the Bank and a lower lot connected to the upper lot by about five steps. The Bank requested that employees park in the lower lot and in the spaces in the upper lot farthest from the Bank, in order to preserve those spots near the Bank for customers. Ms. Rosenberg, who had been parking in the upper lot, close to the Bank, felt that she should be able to park near the Bank because of her medical condition, and because it was safer on those nights when she remained at the Bank after dark. The Bank’s refusal to permit her to do so became an issue of contention between Rosenberg and the Bank.
On May 31, 1991, Rosenberg was notified that her employment with the Bank was being terminated because the Bank was closing the commissioned loan origination department. The other two originators were terminated as well.
DISCUSSION
This court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue of fact, “and [further] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 17 (1989).
To show the absence of a triable issue of material fact, a moving party must demonstrate by materials described in Mass.R.Civ.P. 56(c) that the opposing party has no reasonable expectation of proving an essential element of her case. Brunner v. Stone & *613 Webster Engineering Corp., 413 Mass. 698, 705 (1992); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 714 (1991). A party moving for summary judgment who does not hear the burden of proof at trial may demonstrate the absence of a triable issue of fact either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party is unlikely to submit proof of this element of trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis, 410 Mass. at 716.
Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989); Madsen v. Erwin, 395 Mass. 715, 719 (1985). The opposing party cannot rest on his or her pleadings and/or mere assertions of disputed facts to defeat the motion. LaLonde v. Eissner, 405 Mass. 207, 209 (1989). In deciding a motion for summary judgment, the facts must be viewed in the light most favorable to the nonmoving party, taking all the facts set out in the nonmoving party’s Rule 56(c) materials as true, G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 263 (1991), and all justifiable inferences are to be drawn in favor of the nonmoving party. Anderson, 477 U.S. at 255.
To establish a prima facie case of handicap discrimination, a plaintiff must show that (a) she was handicapped during her employment; (b) she was capable of performing the essential functions of her position; and (c) she was excluded from the position solely because of her handicap. Tate v. Dep’t of Mental Health, 419 Mass. 356, 361 (1995).
Once a plaintiff establishes a prima facie case of employment discrimination, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the firing, and to present evidence in support of that reason. Blare v. Husky Injection Molding Systems Boston, Inc., 419 Mass. 437, 441 (1995). After the defendant has presented this reason, the burden shifts back to the plaintiff to show that the defendant’s stated reason is a pretext. Id at 444. The plaintiff need not show evidence of actual discrimination. Id at 446.
Here, plaintiff has not shown that she was handicapped as defined by M.G.L.ch. 15IB. Furthermore, plaintiff has not presented evidence that she was treated differently than persons who were not handicapped, and has not presented evidence which would rebut the legitimate, nondiscriminatory reason for her firing proffered by the defendant.
I. Proof of Handicap:
Plaintiffhas not carried her burden of showing that she was handicapped under ch. 151B. It is not enough for plaintiff to claim that she is handicapped because she allegedly suffers from multiple sclerosis (“MS”).[3] Plaintiff must show that her condition qualifies as a handicap as defined by ch. 15 IB: (a) a physical or mental impairment which substantially limits one or more major life activities of a person, (b) a record of having such an impairment; or (c) being regarded as having such an impairment. Mass. Gen. L. ch. 151B, §1(17).
Plaintiff claims that she meets this standard because her alleged MS makes it difficult for her to walk distances. It is true that walking would qualify as a major life activity under ch. 15IB. See Lowe v. Angelo’s Italian Foods, 87 F.3d 1170, 1173 (10th Cir. 1996). Plaintiff has not, however, set forth evidence that she was “substantially limited” in this activity. Plaintiff states that she had difficulty walking, but she does not offer any testimony about the frequency or severity of this problem. Furthermore, plaintiffhas not at any point presented any testimony from an expert or physician indicating that she was, in fact, substantially limited in her ability to walk. None of the physicians who treated the plaintiff have testified that they observed any difficulty walking on the plaintiffs part. Plaintiffs case is therefore distinguished from Lowe, where the plaintiff had presented her employer with a doctor’s note detailing her disability and the accommodation required. 87 F.3d at 1172, 1174.
II. Evidence of Pretext:
Moreover, even if plaintiff could establish that she did suffer from a handicap as defined by 15 IB at the time of her termination, plaintiffhas not set forth facts which would support a finding that she was fired because of her handicap. Williams v. Frank, 757 F.Supp. 112, 117 (D.Mass. 1991), aff'd 959 F.2d 230 (1st Cir. 1992) ((“[I]t is unnecessaiy to dwell on the issue of whether a plaintiff has made out a prima facie case where the employer has done all that is required ... by articulating a legitimate, nondiscriminatory reason for the discharge”). Defendants here have articulated a legitimate, nondiscriminatory reason for Ms. Rosenberg’s termination, i.e., the decision to eliminate the entire commissioned mortgage origination department. All three members of the department were terminated, and plaintiffhas not shown that she was treated differently than nonhandicapped employees. Rosenberg must therefore “produce evidence sufficient to support a... verdict that it was more likely than not that the articulated reason [for her termination] was [a] pretext for actual discrimination.” Blare, 419 Mass. at 447.
Plaintiff attempts to show that the reason was a pretext in two ways: first, by submitting an affidavit by her lawyer which states that a former employee of the Bank will testify that her termination was pretext (if the employee is called to testify at trial), and second, by showing that the Bank has misrepresented the profitability of the department.
A: Affidavit of Plaintiffs Attorney: Plaintiffs attempt to show pretext by presenting an affidavit swearing that a person will testify to a certain fact if called to trial must fail. The affidavit submitted by plaintiff does not meet the requirements of Mass.R.Civ.P. 56. *614 Mass.R.Civ.P 56(e) states that “affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.” The affidavit offered in the instant case comes from plaintiffs attorney, who does not have personal knowledge of the facts at issue, and who is not expected to testify at trial. While the affidavit from plaintiffs attorney may be made in good faith, the attorney has no personal knowledge about the conversations alleged to have taken place, and is not capable of testifying about the relevant events or conversations. Furthermore, the attorney is not competent to testify as to what the employee will or will not do in the future; while the employee may presently state that he will testify at trial the attorney has no way of knowing if the employee will actually do so in the future. There is no verification of the facts from the witness who is expected to testify at trial. Even if the party himself had submitted a statement that he would, in the future, testify at trial to certain facts, it would not suffice for purposes of a summary judgment motion. The employee would have to state what the facts were, ánd that he actually had knowledge of them.
In short, an attorney cannot swear to those things about which she has no personal knowledge, and over which she has no control. Therefore, the affidavit offered by plaintiffs attorney is not sufficient to withstand summary judgment.
B. Business Reasons for Closing Department: In the alternative, plaintiff attempts to make a showing of pretext by presenting figures which tend to show that the Department was more profitable than the Bank claims it was. While inconsistency in the reasons offered by a defendant may lead to an inference of pretext, the Bank has consistently advanced concerns beyond the bottom-line figures presented by plaintiff, however, in support of its decision to close the CLO Department. The Bank has listed such concerns as the failure of the Department to generate quality loans for the Bank’s portfolio (as opposed to the loans for sale in the secondary market), the ability of the Department to generate income in excess of costs, the increasing number of delinquent loans among those closed, and the concern that the Department was diverting too much management time and energy. The Bank has further stated that the decision to close the Department was based in part on the fact that the Bank’s financial stability had been threatened by the downturn in the New England economy which was evident by the spring of 1991. These factors provide evidence that the Bank’s decision was based upon legitimate business reasons. See Brunner, 413 Mass. at 702-05 (summary judgment was appropriate where the plaintiff had not rebutted legitimate business reasons, including decline in the workload, proffered by the defendant).
Furthermore, in explaining the Bank’s decision to consider reopening a commissioned loan origination department, the Bank again cited factors not addressed by the plaintiff, such as the recovery of the economy and real estate market in the Northeast, and the stabilized financial condition of the Bank.
It is not for the court to decide whether the Bank’s choice was the wisest course of action or was a sound business decision. See Trustees of Forbes Library v. Labor Relations Commission, 384 Mass. 559, 564-65 (1981) (court must “discern and neutralize unlawful motives, but must not displace permissible business judgments”). “The reasons given for a decision may be unsound or even absurd, but if they are not discriminatory and if the plaintiff does not prove they are pretexts, the plaintiff cannot prevail.” Lewis v. Area II Homecarefor Senior Citizens, Inc., 397 Mass. 761, 765 (1986). Plaintiff does not present evidence to convince a reasonable fact finder that the reasons advanced by the defendants are a pretext.
III. Related Claims:
Since plaintiff has not set forth evidence which would support a finding that there was any wrongdoing on the part of the Bank connected with her termination, the facts in the summary judgment record do not support the plaintiffs remaining claims. The facts set forth do not show that there was a contract created which would entitle the plaintiff to an automatic increase in her benefits after one year with the company, Gregory v. Raytheon, 27 Mass.App.Ct. 1170, 1171 (1989), or that the Bank terminated Rosenberg in order to deprive her of clearly identifiable future compensation reflective of her past services. Gram v. Liberty Mutual Ins. Co., 391 Mass. 333, 335-36 (1984). Furthermore, there is no evidence on the record which would allow the plaintiff to convince a reasonable fact finder that the Bank terminated plaintiffs employment from an improper motive, and therefore improperly interfered with plaintiff’s advantageous relationship with the Bank. See United Truck Corp. Leasing v. Geltman, 407 Mass. 811, 816 (1990).
ORDER
For the foregoing reasons, defendants Motion for Summary Judgment is ALLOWED.

The other counts of plaintiffs complaint are wrongful termination (CountV), intentional interference with advantageous relationships (Count VI), and breach of contract (Count VII). As will be discussed later in the opinion, these counts must fall because the plaintiff has not shown that there was any wrongdoing in her termination from the Bank.

Rosenberg was to be paid exclusively on a commission basis.

The testimony of the physicians who have submitted affidavits in this case conclusively shows that Rosenberg has been diagnosed with “possible multiple sclerosis” and that the symptoms she has displayed are consistent with those associated with multiple sclerosis (“MS”). Although the parties spend a great deal of time arguing whether Rosenberg suffers from actual MS, and what form the disease takes if she does, in fact, suffer from MS, a determination of this fact is not necessary to the disposition of this case.