# MARY JANE DRINKWATER *VS.* SCHOOL COMMITTEE OF BOSTON.

Suffolk. December 4, 1989. - February 26, 1990.

Present: LIACOS, C.J., ABRAMS, NOLAN, O'CONNOR, & GREANEY, JJ.

*Practice, Civil*, Summary judgment. *Anti-Discrimination Law*, Prima facie case, Burden of proof, Employee, Race. *School and School Committee*, Appointment of personnel. *Constitutional Law*, Equal protection of laws.

An affirmative action plan governing the hiring of administrative personnel by the school committee of Boston, which had been incorporated in a Federal court-ordered desegregation plan, did not violate G. L. c. 151B by discriminating against nonmembers of minorities on the basis of their race, inasmuch as all candidates for employment were required to possess certain minimum qualifications, the hiring of nonminority applicants was not barred, and the requirement for affirmative action efforts was to continue in effect only until black employees comprised twenty-five percent of the school system's administrative staff. [759-760]

In an action by an unsuccessful nonminority candidate for a position as a staff attorney in the office of the general counsel of the Boston school committee, alleging that the school committee had violated G. L. c. 151B, § 4, by discriminating against her on the basis of her race, allowance of the school committee's motion for summary judgment was error, where a genuine issue of material fact was presented with regard to the qualifications of the minority candidate who filled the staff attorney position under the school committee's affirmative action plan, which provided for a racial preference when it was faced with "eligible, qualified black candidates." [760-763]

CIVIL ACTION commenced in the Superior Court Department on May 20, 1986.

The case was heard by *John L. Murphy, Jr.*, J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Nance Lyons* (*Mary Jane Drinkwater* with her) for the plaintiff.

*John S. Stadler*, Special Assistant Corporation Counsel, for the defendant.

NOLAN, J. The plaintiff, Mary Jane Drinkwater, commenced this action in 1986 alleging that the school committee of Boston (school committee) discriminated against her on the basis of her race and then declined to hire her in retaliation for her complaints of discrimination. The Superior Court allowed the school committee's motion for summary judgment and Drinkwater appeals from that ruling. We transferred the case to this court on our own motion. We reverse and remand the case to the Superior Court for further proceedings not inconsistent with this opinion.

A party moving for summary judgment "must affirmatively show that there is no real issue of fact." *Attorney Gen.* v. *Bailey*, 386 Mass. 367, 371, cert. denied, 459 U.S. 970 (1982), quoting *Hub Assocs.* v. *Goode*, 357 Mass. 449, 451 (1970). "The inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." In our view the school committee has not met its burden of showing that the material facts are undisputed.

This case has its origins in the decision of the United States District Court in *Morgan* v. *Hennigan*, 379 F. Supp. 410 (D. Mass.), aff'd sub nom. *Morgan* v. *Kerrigan*, 509 F.2d 580 (1st Cir. 1974), cert. denied, 421 U.S. 963 (1975). In that case, the court determined that school committee authorities had engaged in purposeful racial discrimination. *Morgan* v. *Hennigan, supra* at 480. As part of a comprehensive remedy, the District Court ordered the desegregation of the administrative staff of the Boston public schools. The order incorporated an affirmative action plan submitted by the school committee in order to achieve compliance with the order.

In June of 1984, the school committee announced that it was accepting applications for two positions in the office of its general counsel. The positions were listed as "Staff Attor-

ney I" and "Staff Attorney II." Drinkwater applied for both positions; she was hired for neither. Drinkwater, who is white, filed a racial discrimination complaint with the school committee's office of equal opportunity (OEO), alleging that a minority candidate was chosen for one of the positions solely on the basis of race. Due to an unrelated problem, the school committee was forced to repost the two positions. Drinkwater reapplied for both; she received neither.

Drinkwater contends that the school committee's actions violated G. L. c. 151B, § 4 (1988 ed.), by discriminating against her on the basis of her race and, with regard to her reapplication, in retaliating against her for filing a complaint with the OEO. In cases under c. 151B, a complainant must show a prima facie case of discrimination, which then shifts the burden of production to the respondent to show a lawful reason for its action. See *Wheelock College* v. *Massachusetts Comm'n Against Discrimination*, 371 Mass. 130, 137-138 (1976). In arguing that summary judgment was appropriate, the school committee contends that there is no dispute as to the lawful reason for its action: it was under the obligation, pursuant to a Federal court order, to desegregate. At the outset we reject any notion that Drinkwater is bound by a judgment of a Federal court in a case to which she was not a party. See *Hansberry* v. *Lee*, 311 U.S. 32, 40 (1940). See also *Martin* v. *Wilks*, 109 S. Ct. 2180 (1989) (white fire fighters alleging reverse discrimination not bound by consent decrees between city and black fire fighters). The real question is whether, and to what extent, an employer can rely on a court-ordered affirmative action program as a justification for a hiring decision involving race when sued under c. 151B.[1] A subsidiary but important question is whether the

---

[1] We do not reach the question whether affirmative action programs are permissible under the State Constitution's Equal Rights Amendment (ERA). Art. 1 of the Massachusetts Declaration of Rights, as amended by art. 106 of the Amendments. See *Attorney Gen.* v. *Massachusetts Interscholastic Athletic Ass'n, Inc.*, 378 Mass. 342, 357 (1979) (any justification for classification proscribed by ERA, even under affirmative action, should be weighed very carefully).

school committee properly applied the affirmative action program that it adopted.

In *Concerned Minority Educators of Worcester* v. *School Comm. of Worcester*, 392 Mass. 184, 189-190 (1984), we stated that "[c]ertainly a voluntary program for determining layoffs containing an affirmative action component overriding a seniority component, in whole or in part, would not violate State law . . . ." Thus, we have recognized that c. 151B, although neutral in its terms, does not categorically prohibit the implementation of an affirmative action program. Indeed, we prefer to interpret c. 151B in harmony with other statutes which appear to call for affirmative action programs. See G. L. c. 23A, § 44 (1988 ed.); G. L. c. 35, § 53A (1988 ed.). Having determined that c. 151B does not place a per se prohibition on affirmative action plans, we turn to the question whether the plan in this case is compatible with G. L. c. 151B.

In determining whether particular race-conscious remedies violate the equal protection guarantee of the Fourteenth Amendment to the United States Constitution, the United States Supreme Court looks to the "necessity for the relief and the efficacy of alternative remedies; the flexibility and duration of the relief, including the availability of waiver provisions; the relationship of the numerical goals to the relevant labor market; and the impact of the relief on the rights of third parties." *United States* v. *Paradise*, 480 U.S. 149, 171 (1987) (plurality opinion).[2] In the instant case the affirmative action plan is incorporated in a court-ordered desegregation plan. There can be no doubt of the necessity for race-conscious relief. The school committee's plan requires

---

[2]Drinkwater relies primarily on Federal cases arising under Title VII of the Civil Rights Act of 1964 and the Fourteenth Amendment in her argument that the "reverse discrimination" in this case is illegal. Because her complaint only challenges the defendants' actions under G. L. c. 151B, § 4, we construe her argument as urging us to adopt standards under c. 151B similar to those utilized under Federal law. For the purposes of this case we assume, without deciding, that these standards apply under c. 151B.

the school system to "engage in affirmative efforts to recruit and retain minority applicants for employment until . . . Blacks constitute . . . 25% of the non-academic workforces." The court order itself also requires affirmative efforts with regard to hiring blacks until blacks constitute 25% of the school system's administrators. It is undisputed that blacks made up only 23.76% of the school system's administrative staff at the time Drinkwater applied for the positions of Staff Attorney I and Staff Attorney II. The court order and the plan itself both required the school committee affirmatively to recruit blacks for attorney positions.

Drinkwater's main argument appears to center on the contention that the school committee's plan unnecessarily trammels the interests of nonminority applicants. Under this plan race is not the only factor in the hiring process, since all the candidates must meet certain minimum qualifications. The plan does not create a bar to the hiring of white employees and, in fact, a white person was hired to fill one of the two positions. Moreover, the affirmative requirement that the school committee consider minority status is not permanent. Rather, that requirement will only last until blacks make up 25% of the administrative staff of the Boston public school system. We think the plan is both limited and flexibile rather than a rigid rule which unnecessarily trammels the rights of nonminorities.

Even when an employer acts pursuant to an affirmative action plan, however, that employer may violate c. 151B. When a plan is misapplied, the employer's action may constitute illegal "reverse" discrimination. Drinkwater argues that the school committee misapplied the plan in this case.

Drinkwater argues that the plan does not, or should not, apply to the office of the school committee's general counsel. Drinkwater claims that there is a factual dispute as to whether the school committee attorneys are actually assistant corporation counsel of the city of Boston (to whom the court order does not apply). She relies on statements that the school committee's general counsel, Mr. Michael Betcher, made in a deposition to the effect that school committee at-

torneys are "technically" special assistant corporation counsel. Betcher also stated, however, that the label of "special assistant" was indicative of the fact that the corporation counsel retained some jurisdiction over the school committee attorneys in matters of litigation. Other than with regard to the understanding concerning litigation, there was no separate written agreement between the corporation counsel and the school committee's general counsel. Moreover, the school committee submitted evidence which showed that the attorneys in the general counsel's office were hired and employed by the school committee. The attorney positions within the general counsel's office were, organizationally, within the school department. Positions in the general counsel's office were included in the annual reports on desegregation which the school committee submitted to the Federal court. These undisputed facts are enough to bring the staff attorneys within the ambit of the "nonacademic" workforce of the Boston public school department, to which both the plan and the court order apply. The fact that the staff attorneys may also be special assistant corporation counsel or that the corporation counsel may have some say in the hiring decisions is irrelevant.

Drinkwater contends that the goal of having 25% minorities should not apply because blacks do not make up 25% of the relevant labor market (attorneys).[3] The goal of having 25% minority administrators applies, however, to all the administrative positions in the Boston public schools as a whole. As long as the total percentage of black administrators is less than 25%, the school committee must, in all its hiring efforts, affirmatively act to hire members of minorities. Although both the court order and the plan require that minorities be spread out in all the administrative departments, neither requires that each department actually have 25% minority personnel. We see nothing wrong with a plan that looks to the administrative positions in the school system as a

---

[3]Drinkwater asks this court to take judicial notice of this fact.

whole rather than pigeonholing each type of position in the system. Thus, the plan itself is valid.

Even though the plan was properly applicable to the staff attorney positions, we agree with Drinkwater that there is a factual issue regarding the qualifications of the minority candidate who filed the Staff Attorney I position. The successful applicant's qualifications are material because the Federal court order in this case did not require the blind appointment of members of minorities to administrative positions. Rather, it provided for a racial preference when the school committee was faced with "eligible, qualified black candidates." The affirmative action plan explicitly stated that the goals it announced were not "rigid or inflexible quotas." The plan only required the school committee to rely "in part" on the race of a candidate when it was "reasonably necessary" to do so. Thus, race is only a factor to be considered as between otherwise *qualified* applicants.

The qualifications listed in the job posting including "[p]roficiency in education law, administrative law and civil litigation; knowledge of state and federal special education laws and regulations; analytic and writing skills; administrative ability; human relations skills." Drinkwater asserts that the successful applicant had to meet all the qualifications.[4]

The school committee's position, supported by deposition testimony, was that the qualifications were not intended to require experience in each of the areas listed, as long as an applicant was "substantially in compliance with the requirement that she exhibit some expertise in that area." The rea-

___

[4]It is undisputed that the successful applicant failed the July, 1984, bar examination, and that one of the qualifications listed in the job posting was "current membership in Massachusetts and federal bars, or admission to bar membership by January, 1985." This, however, creates no issue concerning the qualification of the successful applicant *at the time she was hired,* which is the time that we must consider in evaluating whether the school committee misapplied its facially valid affirmative action plan. As applied to 1984 law school graduates such as the successful applicant, then, we construe that requirement to be a condition subsequent to the employment, the nonoccurrence of which might subject the employee to discharge.

son offered by the school committee for its willingness to accept applicants without all of the qualifications listed was that it was prepared to consider applicants with "0 years" experience.

In its answer to the complaint, the school committee averred that "the minority individual selected showed very strong potential, but had no significant special education experience." Other facts tended to show that the successful applicant did have some experience in administrative law and civil litigation. Because the successful applicant met some, but not all, of the qualifications listed, there is a genuine issue whether the school committee complied with its affirmative action plan, which we have already determined is facially valid. See *Hub Assocs.* v. *Goode*, 357 Mass. 449, 451 (1970).

In support of her claim of retaliation, Drinkwater presented evidence which showed that the school committee's general counsel was "angry that Ms. Drinkwater was accusing me of a violation of state and federal discrimination laws." If Drinkwater should have received the Staff Attorney I position, even under the affirmative action plan as she argues, and the general counsel declined to recommend her when she reapplied because she had filed a complaint to that effect, then there may indeed have been illegal retaliation. The school committee, of course, contends that there was no retaliation.

In any event, however, there is a genuine issue of material fact, as already noted. Therefore, it was error to allow the school committee's motion for summary judgment. The judgment is reversed and the case is remanded to the Superior Court.

*So ordered.*