John **MENDOZA**, Plaintiff,

v.

**UNION STREET BUS COMPANY, INC.,** Defendant.

**Civ. A. No. 93–10397–MEL.**

United States District Court, D. Massachusetts.

Feb. 10, 1995.

, Harvey A. Schwartz, Schwartz, Shaw & Griffith, Boston, MA, for plaintiff.

Arthur J. Caron, Jr., New Bedford, MA, Walter Smith, Burke and Smith, James B. Ross, North Dartmouth, MA, for defendant.

LASKER, District Judge.

In 1991, John Mendoza was fired from his job as an afternoon foreman at the Union Street Bus Company. Mendoza sued his for-

mer employer, alleging that his discharge was an act of race discrimination and a violation of both Title VII of the United States Code and Chapter 151B, § 4 of the Massachusetts General Laws, the Commonwealth's anti-discrimination statute. After a three-day trial, a jury found that Mendoza had proven his claim and awarded him $285,000 in compensatory damages.[1] Three issues remain to be resolved before a judgment may be entered in this case: First, Union Street Bus Co. moves for judgment as a matter of law, and, in the alternative, for a new trial; second, the appropriate rate of prejudgment interest is in dispute; third, Mendoza moves pursuant to 42 U.S.C. § 1988 and Mass. Gen.L. ch. 151B § 9 for attorneys' fees.

## A. Judgment as a Matter of Law

■ Union Street Bus Company (Union) contends that the evidence presented at trial is insufficient to support the jury's finding.

Here, the question before the jury was purely one of credibility. Union's owner, John George, testified that Mendoza's discharge was a product of his unsatisfactory work and insubordination, rather than, as Mendoza contended, a consequence of a cumulative history of discrimination at Union.

■ A judgment notwithstanding the verdict[2] may be granted only when the evidence, viewed in a light most favorable to the nonmovant, is such that reasonable persons could reach but one conclusion. *Putnam Resources v. Pateman,* 958 F.2d 448, 459 (1st Cir.1992); *Wagenmann v. Adams,* 829 F.2d 196, 200 (1st Cir.1987). Such is not the case here. Although far from overwhelming, the evidence presented by Mendoza was sufficient to permit a reasonable jury to find in his favor.

## B. New Trial

■ Union moves in the alternative for a new trial. A trial judge may grant such

---

1. The jury specified that $93,000 of its award is compensation for back pay, $167,00 for front pay, and $25,000 for emotional harm.

2. 1991 amendments to Federal Rule of Civil Procedure Rule 50(b) eliminate the distinction between a pre-verdict motion for directed verdict and a motion for judgment notwithstanding the verdict. Both motions are now known as motions for judgment as a matter of law. *Putnam Resources v. Pateman,* 958 F.2d 448, 459 n. 7 (1st Cir.1992).

relief "only if he or she believes that the outcome is against the clear weight of the evidence such that upholding the verdict will result in a miscarriage of justice." *Putnam*, 958 F.2d at 459 (quoting *Conway v. Electro Switch Corp.*, 825 F.2d 593, 598–599 (1st Cir.1987)). The jury's verdict survives this scrutiny as well. As the First Circuit noted in *Putnam*, "[a] trial judge may not grant a motion for a new trial merely because he or she might have reached a conclusion contrary to that of the jurors. . . ." 958 F.2d at 459. As discussed above, an order for a new trial in the case at hand would amount to an improper rejection of the jury's determinations regarding the credibility of the witnesses.

█ Finally, Union contends that a new trial should be ordered on the grounds that the compensatory damages awarded by the jury are excessive.[3] Union's argument, however, rests on a number of impermissible assumptions. For example, Union relies in its computations on the fact that Mendoza would have retired from his position at the bus company at his first opportunity. This determination is among those—including potential salary raises and the value of health benefits—left to the jury. In light of its discretion to make such judgments, the jury's award of compensatory damages is not excessive.

Accordingly, Union's motion for a new trial is denied.

## C. Prejudgment Interest

█ Mendoza's complaint included alleged violations of federal and Massachusetts civil rights laws, both of which provide for prejudgment interest. Mendoza contends that, having prevailed on his state and federal claims, he is entitled to prejudgment interest calculated at the 12% rate specified by Massachusetts law. Mass.Gen.L. ch. 231 § 6B.

Union asserts that the jury was instructed as to liability under only Title VII, and that accordingly, Mendoza is not entitled to interest at a rate higher than the 9% provided for by federal law. In essence, Union contends that Mendoza's state law claim was never presented to the jury.

The relevant portion of the verdict sheet submitted to the jury asks, "Do you find that John Mendoza has proven by a preponderance of the evidence that his race was a motivating factor in Union Street Bus Company's decision to discharge him?" Union claims that, under Massachusetts employment discrimination law, Mendoza was required to demonstrate not only that race was a motivating factor in Union's decision, but that it was the determinative factor. An examination of Massachusetts caselaw neither proves nor disproves this assertion. However, because Union has waived what boils down to an objection to the jury instructions, the question need not be decided here.

Title VII was amended in 1991 to provide that:

> [A]n unlawful employment practice is established when the complaining party demonstrates that race . . . was a motivating factor for any employment practice, even though other factors also motivated the practice.

42 U.S.C. § 2000e–2(m). Massachusetts has not enacted an analogous amendment to its own employment discrimination statute; nor has any Massachusetts court ruled as to whether the Massachusetts statute is to be read to apply the new federal standard of liability. Union contends that this silence on the part of the Massachusetts legislature and courts demonstrates that the Commonwealth rejects the new federal standard. Mendoza counters that Massachusetts courts have traditionally interpreted Mass.Gen.L. 151B in accordance with federal law,[4] and that it

---

3. After the jury rendered its verdict, Mendoza waived his request for punitive damages.

4. *See Harvard Law School Coalition for Civil Rights v. President & Fellows of Harvard College*, 413 Mass. 66, 595 N.E.2d 316 (S.J.C.1992) (Court's interpretation of standing under Mass. Gen.L. ch. 151B "buttressed by" Title VII caselaw); *Drinkwater v. School Committee of Boston*, 406 Mass. 756, 550 N.E.2d 385 (S.J.C.1990) (Court "assume[s], without deciding" that federal standards apply under ch. 151B with respect to plaintiff's allegation of reverse discrimination); *Cherella v. Phoenix Technologies Ltd.*, 32 Mass. App.Ct. 919, 586 N.E.2d 29 (1992) (federal law included in discussion of equitable tolling of statute of limitations under ch. 151B).

should be assumed that Massachusetts and federal standards are identical in the absence of an express rejection of federal interpretation by the Commonwealth.

Mendoza's argument is undermined, however, by a 1992 decision of the Supreme Judicial Court of Massachusetts, *Brunner v. Stone & Webster Engineering Corp.*, 413 Mass. 698, 603 N.E.2d 206. While the Court's opinion in *Brunner* does not explicitly reject the standard articulated in the federal 1991 amendment, it clearly states that in a sex discrimination suit brought under Mass.Gen.L. ch. 151B, "the plaintiff has the burden of persuading the fact finder that the employer intentionally discriminated against him or her on account of sex, and that, but for the discrimination, the employer would not have taken the complained-of action." 603 N.E.2d at 208.

It is unnecessary, however, to resolve this question of Massachusetts law, because Union never challenged Mendoza's position that the federal and state standards are identical, nor did it request the Court to charge the jury that the Massachusetts standard differed from the federal rule. Instead, Union expressed approval of the language used, both in discussions that preceded the Court's instructions to the jury, and in a conference immediately following them, at which the Court specifically asked counsel for any proposed modifications.[5]

As the First Circuit noted in *Putnam*, 958 F.2d at 456, "[s]ilence after instructions, including instructions on the form of the verdict to be returned by the jury, typically constitutes a waiver of any objections."[6] Mendoza's complaint and all of his subsequent submissions refer to claims under both Mass.Gen.L. ch. 151B and Title VII: Union's approval of the Court's instructions to the jury waived any objection that there is a relevant substantive difference between Massachusetts and federal law.

■■■ Furthermore, Mendoza is entitled to choose between federal and state prejudgment interest rates:

> [W]here parallel claims are brought under both federal and state laws, and the damages recovered are duplicative, i.e., not segregated into separate federal and state components, a prevailing plaintiff is entitled to select the body of law under which the damages will be paid.

*Foley v. City of Lowell, Massachusetts*, 948 F.2d 10, 17 (1st Cir.1991) (holding that a plaintiff prevailing on federal and state civil-rights claims is entitled to "the undiminished fruits of his state-law victory", including prejudgment interest under Mass.Gen.L. ch. 231, § 6B). As *Foley* makes clear, prejudgment interest under § 6B is to be added ministerially after the verdict, and applies to the period of time between the commencement of suit and the entry of judgment (not delivery of the verdict). *Id.* Prejudgment interest is not to be awarded, however, on that portion of the judgment that is attributable to "front pay." *Conway v. Electro Switch Corp.*, 402 Mass. 385, 523 N.E.2d 255 (1988) (answering a question certified by the U.S. Court of Appeals for the First Circuit).

■■■ Accordingly, Mendoza is entitled to prejudgment interest—calculated at 12% per annum for the period between the date his suit was commenced and the date judgment is entered—on $118,000, the amount of his judgment less the amount allotted by the jury for "front pay".

## D. Attorneys' Fees

■■■ Mendoza moves pursuant to 42 U.S.C. § 1988 and Mass.Gen.L. ch. 151B § 9 for reasonable attorneys' fees and costs. Section 1988, however, does not authorize attorneys' fees for parties prevailing on Title

---

5. Before adjourning for jury deliberations, the Court asked counsel at a sidebar conference for any proposed "clarification or amplification" of the instructions just delivered to the jury. Union responded, "satisfied, your honor." Trial transcript.

6. *See also Anderson v. Cryovac, Inc.*, 862 F.2d 910 (1st Cir.1988) ("To drive the final nail, we note that when the judge, following the charge, asked for objections at sidebar, plaintiffs' counsel registered no opposition to the interrogatory.... If a slip has been made, the parties detrimentally affected must act expeditiously to cure it, not lie in wait and ask for another trial when matters turn out not to their liking.").

VII claims. 42 U.S.C. § 1988; *Carter v. Sedgwick County*, 929 F.2d 1501 (10th Cir. 1991). Rather, Title VII itself authorizes the Court, in its discretion, to allow a "prevailing party" a reasonable attorney's fee in any Title VII proceeding. 42 U.S.C. § 2000e–5(k).[7] Mendoza's motion, therefore, is treated as a motion pursuant to § 2000e–5(k) and Mass.Gen.L. ch. 151B § 9.[8]

 Union does not dispute that Mendoza is a "prevailing party." Nor does the defendant suggest that the amount requested, $44,191.40, is unreasonable.[9] Union's sole objection to the request, orally stated at a post-trial conference, is that Mendoza's invocation of a statutory provision for attorneys' fees in this civil rights action is inappropriate in light of the contingent-fee arrangement between Mendoza and his attorney.

Under the agreement, any attorneys' fees awarded by the Court are to be added to the amount of damages found by the jury. Counsel is to be paid one-third the sum of the jury verdict and the court-awarded attorneys' fees, and Mendoza is to keep the remaining two-thirds.

To support the proposition that his recovery of attorneys' fees should not be limited or barred by this arrangement, Mendoza cites *Blanchard v. Bergeron*, 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989), in which the Supreme Court held that a plaintiff may recover reasonable attorneys' fees under 42 U.S.C. § 1988, even if a contingent-fee arrangement limits the amount that the plaintiff must actually pay his attorney. More

persuasive, however, is the Supreme Court's opinion in *Venegas v. Mitchell*, which held that § 1988 does not invalidate a contingent-fee contract that would require a prevailing plaintiff to pay his attorney more than the statutory award against the defendant. 495 U.S. 82, 110 S.Ct. 1679, 109 L.Ed.2d 74 (1990). In *Venegas*, the Court observed that § 1988 makes the prevailing *party*, not his counsel, eligible for a discretionary award of attorneys' fees, and that the aim of the section is to "enable civil rights plaintiffs to employ reasonably competent lawyers without cost to themselves if they prevail." *Id.* at 86, 110 S.Ct. at 1682. "But," the Court continued, "there is nothing in the section to regulate what plaintiffs may or may not promise to pay their attorneys if they lose or if they win." *Id.* at 86–87, 110 S.Ct. at 1682. The Court further noted, "[i]ndeed, depriving plaintiffs of the option of promising to pay more than the statutory fee if that is necessary to secure counsel of their choice would not further § 1988's general purpose of enabling such plaintiffs in civil rights cases to secure competent counsel." *Id.* at 89–90, 110 S.Ct. at 1684.[10] These observations suggest that to penalize a plaintiff who has made a contingent-fee arrangement with his attorney by reducing his court-awarded attorneys' fee would undermine the purpose of § 1988 and its Title VII analog, 42 U.S.C. § 2000e–5(k).

Union's objection to Mendoza's fee application dispensed with, it is nonetheless necessary to determine whether the amount requested is reasonable. Counsel's well-documented request for attorneys' fees estab-

---

7. The distinction appears to be largely a technical one. *See Nadeau v. Helgemoe*, 581 F.2d 275 (1st Cir.1978) (Standards for awarding fees are the same under 42 U.S.C. § 1988 and 42 U.S.C. § 2000e–5(k)); *Carter v. Sedgwick County*, 929 F.2d at 1506 (§ 2000e–5(k) and § 1988 "are so similar in language and purpose that in most cases they are given similar judicial interpretations." (quoting M. Player, *Employment Discrimination Law*, § 5.69, at 450 (1988))).

8. Mass.Gen.L. 151B § 9 provides, in relevant part, "[i]f the court finds for petitioner it shall, in addition to any other relief and irrespective of the amount in controversy, award the petitioner reasonable attorney's fees and costs unless special circumstances would render such an award unjust."

9. The Supreme Court has established that the "lodestar" approach is the appropriate method of determining reasonable attorneys' fees. Simply put, the amount awarded is equal to the number of hours reasonably worked on the matter multiplied by the applicable hourly market rate for legal services. *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983).

10. Union presents no authority suggesting that Mendoza's contingent-fee arrangement with his attorney is in any way incompatible with an award of reasonable attorneys' fees.

lishes that his expenditure of time was reasonable, as are the hourly rates proposed, in light of the lawyers' experience and prevailing market rates.

Accordingly, Mendoza is awarded attorneys' fees in the amount of $44,191.40.

Submit judgment on notice.