Brian E. MITCHELL, Plaintiff,

v.

Elaine L. CHAO, in her official capacity as Secretary of the United States Department of Labor; John L. Haunch, in his official capacity as assistant Secretary of Labor for the Occupational Safety and Health Administration; Patricia K. Clark, in her official capacity as Regional Administrator of Region 2, of the Occupational Safety and Health Administration, Defendants,

No. 5:04–CV–0011.

United States District Court, N.D. New York.

March 2, 2005.

Coulter, Ventre & McCarthy L.L.P., Liverpool, NY (M. Joanne Van Dyke, of counsel), for Plaintiff.

Glenn T. Suddaby, United States Attorney for the Northern District of New York, Syracuse, NY (Paula Ryan Conan, of Counsel), for defendant.

## BACKGROUND

MUNSON, Senior District Judge.

The complaint in this action, brought by a former federal employee, alleges age and gender discrimination, retaliation and constructive discharge from his federal employment. Nine claimed statutory violations are asserted:

(I) retaliation for filing discrimination claim with the CRC in violation of Title VII of 42 U.S.C. § 2000e–3, 3a;

(II) retaliation and/or age discrimination in violation of the Title VII;

(III) retaliation and/or age discrimination in violation of Age Discrimination in Employment Act (ADEA) 29 U.S.C. §§ 21, 623(d);

(IV) gender discrimination and/or retaliation in violation of Title VII, and 42 U.S.C. § 1981, § 1983, § 1985 and § 1988;

(V) gender discrimination in violation of Title VII and 42 U.S.C.1981, 1983, 1985 and 1988, and is bringing a claim for gender discrimination and/or discrimination in violation of the ADEA and Title VII 42 U.S.C. § 2000e, § 2000e–3, § 2000e–2(a)(1), § 2000–2(a)(2), § 2000–2(b);

(VI) in this count, there is a Private Action claim, and Count VI is withdrawn;

(VII) plaintiff made a claim pursuant to Section 7(b), 29 U.S.C. § 626(b) of the ADEA which incorporates by reference deprivation of rights under 16(b), 29 U.S.C. § 216(b), of the Fair Labor Standards Act of 1938, as amended 29 U.S.C. § 201, *et seq.*;

(VIII) violation of New York Executive Law § 290;

(IX) breach of employment contract.

Plaintiff has withdrawn counts VI, VIII and XI, and will withdraw Count V if it is repetitive. The court finds that it is, and Count V is deemed withdrawn.

The plaintiff is a white male born in 1955. He was employed by the Occupational Safety and Health Administration ("OSHA") in its Syracuse, N.Y. office from 1988 through December 1997. In June 1995, plaintiff applied for a promotion to a GS–12 salaried position. He was 40 years and three months old at the time. In August 1995, he was notified that a younger, female co-worker had been selected

for the promotion. On October 1995, plaintiff filed a complaint with the New York State Civil Rights Commission ("CRC") and/or the federal Equal Employment Opportunity Commission ("EEOC") claiming that his non-selection for the open position was illegally based upon his age and sex. Subsequent to a CRC investigation of the charges, plaintiff requested an evidentiary hearing on his non-selection complaint, which was held by Administrative Law Judge ("ALJ") Felix Orraca.

On April 26, 1996, about six months after starting his non-selection EEOC case, plaintiff contacted an EEOC counselor to complain of retaliation by his supervisors for his prior EEOC activity. After completing EEOC counseling pursuant to EEOC regulations at 29 CFR 1614, plaintiff filed a second formal complaint of discrimination with the CRC on August 18, 1996.

Plaintiff disagreed with the allegations accepted for the investigation by the CRC and requested additional allegations be accepted. In a letter dated May 20, 1997, the CRC agreed to amend the issues for investigation as follows:

> Whether the Occupational Safety and Health Administration discriminated against Brian Mitchell on the basis of reprisal for previous participation in the EEO process by 1) requiring him solely to forward weekly itinerary to his supervisor; 2) requiring him to report plans for working earlier or later than normal Duty Officer working hours to his supervisor one day in advance of serving as duty officer; 3) ignoring facts provided by him in response to an audit conducted by the National Office that indicated that he had performed less than one audit per month for the time period October 1, 1995 through March 31, 1996, as well as failing to consider positive comments set forth in his March 25,

1996, annual performance appraisal regarding the number of inspections; 4) scrutinizing his utilization of time on June 12, 1996; 5) denying him access to make copies of documents in his working file; 6) failing to comply with an agreement entered on June 17, 1996, by which he did not have to report to his supervisor until June 28, 1996; 7) failing to investigate the theft of his pocket calender from his briefcase on March 24, 1996, as well as the earlier theft of documents from his office; 8) creating and placing computer generated statistical data on his performance, as well as notes (dated August 9, 1995 and August 21, 1995) regarding his non-selection, in his official working and personal files; 9) reducing his annual performance rating from "highly effective" to "fully successful"; 10) requesting that he explain several activities and time spent on such activities despite the fact that he had previously supplied management with weekly itinerary and a daily report; 11) requesting that he supply a "statement of justification" for the purchase of previously approved safety shoes; and 12) requiring that he receive "Lead in Construction" training under the supervision of Paula Gonsa.

In the same letter, additional allegations were explicitly dismissed by the CRC pursuant to various provisions of the EEO regulations. Plaintiff took no appeal from these dismissals.

Plaintiff filed a third formal complaint with the CRC on February 3, 1997. The CRC accepted the following allegations for investigation in this case.

> Whether OSHA discriminated against Brian Mitchell on the basis of age (41), sex (male), and/or in reprisal for previous participation in the EEOC process by 1) not allowing him to work on flex time for the period September 5, 1996 to

October 2, 1996; 2) failing to afford him the option of working from home; 3) giving him four inspection assignments on the same day, and 4) giving him inspection assignments for which he had no prior training or technical expertise.

In a letter of May 12, 1997, plaintiff's attorney requested that the pending retaliation claim cases be consolidated for investigation and hearing by the EEOC. After obtaining plaintiff's agreement, through his attorney, to an October 1996 "cut-off" date for the consolidated investigations, the CRC agreed to this request.

Plaintiff resigned from his federal position in December 1997. In a letter dated February 28, 1998, plaintiff's attorney advised the CRC that he had been subjected to "ongoing harassment," which resulted in his "forced [decision] to resign his nearly ten year career with OSHA." The letter also requested a hearing before the EEOC on his consolidated complaints.

On March 13, 1998, the CRC forwarded the Investigative Reports on all three consolidated cases to the EEOC in accordance with plaintiff's request for a hearing. The CRC also informed plaintiff that his apparent claim of constructive discharge had not been accepted for investigation as the issue had not been raised to an EEOC counselor under 29 CFR 1614. Although plaintiff's attorney sought CRC guidance from the CRC concerning the filing of a complaint of constructive discharge, the CRC does not have any record of any constructive discharge having been filed by plaintiff's attorney at any time.

As constructive discharge was at no time ever an accepted issue for investigation, the agency's investigation did not include any information concerning plaintiff's wages, hours, benefits, and retirement package at this new employment, or the circumstances accompanying his securing such employment. The agency, also, did not develop any evidence to address the primary issue in a constructive discharge case of whether a reasonable employee in plaintiff's position would have found his working conditions at the Syracuse OSHA office so intolerable as to feel compelled to resign.

In accordance with plaintiff's request, hearings were held before EEOC Administrative Judge ("AJ") Felix Orraca, concluding in May 1999, on all three of his CRC cases. On June 13, 2002, AJ Orraca issued a finding of discrimination by the Agency on the basis of age and gender when he was not selected for the Industrial Hygienist position, and ordered a full complement of remedies. The AJ further found that plaintiff did not prove his claims of retaliatory discrimination. The decision referred to the fact that plaintiff "eventually . . . left the employ of the Agency, however, constructive discharge was not among the issues identified for decision by the AJ during the hearing".

The CRC adopted and implemented the AJ's decision and undertook to effectuate compliance with the prescribed remedies on July 3, 2002. On August 30, 2002, plaintiff appealed the AJ's decision to the Office of Federal Operations ("OFO") of the EEOC. This appeal automatically stayed the agency's compliance with the prescribed remedies. The appeal did not challenge the finding of discrimination or the remedy awarded, nor did he indicate that the agency has not complied with the AJ's decision ordering corrective action. The appeal contended that he should have prevailed on his remaining retaliation claims only. The CRC filed a motion opposing plaintiff's appeal on September 19, 2002.

The EEOC Office of Federal Operation issued its appeal decision on September 30, 2002, upholding the CRC's adoption of the

AJ's decision. After this final decision, the CRC carried out its compliance with the remedies ordered by the AJ. On January 4, 2004, (ninety-six days after the EEOC decision), plaintiff instituted this federal court action. The complaint seeks declaratory and injunctive relief, compensatory, punitive and liquidated damages, costs and attorneys' fees.

## DISCUSSION

■ Defendants move for dismissal of this civil action against all defendants except Secretary of Labor Chao; dismissal of Counts III–IX of the complaint; striking of certain portions of the prayer for relief; and dismissal of portions of the prayer for relief; and dismissal of any remaining claims; all pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)6 and/or 56(c). Plaintiff has entered opposition to these motions.

When ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), "the factual allegations contained in the plaintiff's complaint must be taken as true and must be viewed, along with all reasonable inferences to be drawn therefrom, in the light most favorable to the plaintiff." *Meriwether v. Faulkner*, 821 F.2d 408, 410 (7th Cir.1987), *cert. denied*, 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 269 (1987). In contrast, Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When a moving party satisfies the requisites of Rule 56(c), a motion for summary judgment should be granted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the moving party has carried its burden under Rule 56(c), the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial". *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588,106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

■ Title VII is the exclusive remedy for a federal employee suing for employment discrimination. *Brown v. General Services Administration*, 425 U.S. 820, 835, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976); *Briones v. Runyon*, 101 F.3d 287, 289 (2d Cir.1996); *Lewis v. Snow*, 2003 WL 22077457, at *9–12 (S.D.N.Y. Sept.8, 2003); *Costanzo v. United States Postal Service*, 2003 WL 1701998, at *4 (S.D.N.Y. Mar.31, 2003); see also *Rivera v. Heyman*, 157 F.3d 101, 105 (2d Cir.1998) (affirming dismissal of New York State and New York City human rights laws claims because a Title VII claim was the only action a federal employee alleging employment discrimination could bring.); *King v. United States Postal Service*, 2002 WL 1067825, at *4 (S.D.N.Y. May 29, 2002) ("[C]ourts have consistently refused to permit the invocation of state law remedies against individual supervisors to circumvent the exclusivity of Title VII as a remedy for discrimination in federal employment.").

■ Although plaintiff has asserted claims for sex discrimination and retaliation under a number of statutes, the exclusive remedy for sex discrimination and related retaliation claims for federal employees is under § 717 of Title VII, as amended, 42 U.S.C. S 2000e–16. In *Brown v. General Services Administration*, the Supreme Court held that because Congress's intent in enacting § 717 was "to create an exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination," § 717 "provides the exclusive judicial

remedy for claims of discrimination in Federal Court." 425 U.S. 820, 829, 835, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). Federal courts have repeatedly followed *Brown* in holding that employment sex discrimination and related retaliation claims made by federal employees based on various statutes are preempted by Title VII. See, e.g., *DiPompo v. West Point Military Academy*, 708 F.Supp. 540, 544 (S.D.N.Y.1989), aff'd, 960 F.2d 326 (2d Cir.1992) (dismissing 42 U.S.C. S 1985 claims as well as New York State statutory claims because of Title VII preemption); *Hughes v. United States Postal Service*, 700 F.Supp. 779, 783 (S.D.N.Y.1988) (dismissing a § 1981 claim because "Title VII and the Rehabilitation Act provide the sole remedies for federal employees' allegations of employment discrimination"); *Mendoza v. Union Street Bus Company*, 876 F.Supp. 8, 12 (D.Mass. 1995)(§ 1988 does not authorize attorneys' fees for parties prevailing on Title VII claims). 42 U.S.C. § 1988; *Carter v. Sedgwick County*, 929 F.2d 1501 (10th Cir. 1991). Rather, Title VII itself authorizes the Court, in its discretion, to allow a "prevailing party" a reasonable attorney's fee in any Title VII proceeding. 42 U.S.C. S 2000e–5(k). *Ramey v. Bowsher*, 915 F.2d 731, 734 (D.C.Cir.1990), *cert. denied*, 499 U.S. 947, 111 S.Ct.1413, 113 L.Ed.2d 466 (1991) (tort claim barred by the exclusivity of Title VII); *Castro v. United States*, 775 F.2d 399, 403 n. 3 (1985) (holding that § 717 is exclusive judicial remedy for claims of discrimination in federal employment); *Carver v. Casey*, 669 F.Supp. 412, 418–19 (S.D.Fla.1987) (dismissing § 1983 and § 1986 claims because of Title VII preemption); *Person v. United States Dept. of Agriculture*, 593 F.Supp. 1054, 1058–59 (E.D.Wis.1984) (dismissing claims under 28 U.S.C. § 1331, § 1343, § 2201, and § 2202 and Fifth Amendment of the United States Constitution because of Title VII preemption).

■ Similarly, the ADEA provides the exclusive remedy for federal employees who allege age discrimination. *Ray v. Nimmo*, 704 F.2d 1480, 1485 (11th Cir. 1983) (citing *Paterson v. Weinberger*, 644 F.2d 521, 524–25 (5th Cir.1981))(ADEA provides exclusive remedy for age discrimination claims by federal employees).

Therefore, because Title VII and the ADEA preempt plaintiff's sex and age discrimination and retaliation claims under 42 U.S.C. § 1981— § 1983 and 28 U.S.C. § 1331, § 1343, § 1346, § 1985, § 1986, those claims are dismissed. Plaintiff's sole remedies for his claims of sex and age discrimination and retaliation are under Title VII and the ADEA.

■ Moreover, it is well-settled that only the "head of the department, agency, or unit, as appropriate, shall be the defendant" in a Title VII action by a federal employee. 42 U.S.C. § 2000e–16(c); accord Lewis, 2003 WL 22077457, at *4; *White v. Browner*, 2000 WL 1425096, *3, 2000 U.S. Dist. Lexis 13976, at *7 (S.D.N.Y. Sept. 26, 2000); *Drayton v. Veterans Administration*, 654 F.Supp. 558, 561–62 (S.D.N.Y.1987). The agency itself or its lower level federal employees are not appropriate defendants. *Meiri v. Dacon*, 607 F.Supp. 22, 23 (S.D.N.Y.1984), aff'd 759 F.2d 989 (2d Cir.1985), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985); *Classen v. Brown*, 1996 WL 79490 (D.D.C. Feb. 2, 1996). This is a result of the limited scope of the United States' waiver of its sovereign immunity concerning claims of discrimination by a federal employee on the basis of race, gender, color and national origin. The United States has only waived that immunity with respect to Title VII against the head of the agency where the plaintiff is employed. *White*, 2000 WL 1425096, *3, 2000 U.S. Dist. Lexis 13976, at *7.

As plaintiff was a federal employee of the Department of Labor at the time the events in this case took place, he may only bring a Title VII of ADEA action. Further, the only permissible defendant in that action is the Secretary of Labor Elaine Chao, as the head of the federal agency in which the alleged discriminatory actions occurred. Thus, defendants John L. Henshaw and Patricia K. Clark are entitled to summary judgment on plaintiff's Title VII claims, and these defendants, as well as Secretary Chao, are entitled to summary judgment on plaintiff's claims based on violations of New York State human rights laws. See, *Lewis v. Snow*, 2003 WL 22077457 (S.D.N.Y. Sept.8, 2003) at *4, 9–12 (dismissing federal employee's Title VII claim against an individual who was not head of the department, agency, or unit, and dismissing various state and federal non-Title VII claims against all defendants); *Drayton*, 654 F.Supp. at 561–62 (dismissing federal employee's Title VII claims against agency and lower level federal employees); King, 2002 WL 1067825, at *4 (dismissing federal employee's state law claims against supervisors); *White*, 2000 WL 1425096, *3, 2000 U.S. Dist. Lexis at *8 (dismissing federal employee's Title VII claims against the federal agency that employed her); see also Rivera, 157 F.3d at 105 (affirming dismissal of federal employee's state law discrimination claims).

■ The defendants contend that plaintiff is precluded from asserting a constructive discharge claim because plaintiff did not assert such a claim in his EEOC charges and that claim is not reasonably related to his EEOC charges. The Court disagrees.

■ In order to exhaust his administrative remedies, a plaintiff is required to file his Title VII claims with the EEO office. The Second Circuit has made clear that this requirement is not a jurisdictional one. *Terry v. Ashcroft*, 336 F.3d 128, 150–51 (2d Cir.2003). A plaintiff is deemed to have exhausted his administrative remedies when his claims are "included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge." *Butts v. City of New York Department of Housing Preservation & Development*, 990 F.2d 1397, 1401 (2d Cir.1993) (superceded on other grounds). A claim of discrimination is reasonably related to a charge filed with the EEOC if (1) the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination; or (2) the claim alleges retaliation by the employer against an employee for filing an EEOC charge; or (3) the plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge. *Butts*, 990 F.2d at 1402–3.

In the present case, plaintiff's complaint alleges that defendants retaliated against him for filing the initial EEOC charges of gender and age discrimination and retaliation. First, the complaint describes much of the factual and procedural background of the initial claim, including the alleged retaliation. Second, the complaint alleges that, after plaintiff filed the initial gender and age discrimination and retaliation charges, his supervisors retaliated against him by 1) not allowing him to work on flex time for the period from September 5, 1996 to October 2, 1996; 2) failing to afford him the option of working from home, 3) giving him four inspection assignments on the same day; and 4) giving him inspection assignments for which he had no prior training or technical expertise. Finally, the complaint alleges that this continuous

retaliatory conduct compelled plaintiff to resign his position.

Reading plaintiff's complaint with the required liberality see *Platsky v. CIA*, 953 F.2d 26, 28 (2d Cir.1991) (*per curiam*) (citing, *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (*per curiam*)), the court concludes that the complaint alleges a *prima facie* case of constructive discharge resulting from his supervisors' relentless negative behavior, that lead to his ultimate resignation.

Because plaintiff's constructive discharge claim is reasonably related to his initial discrimination charges, he was not required to file a second charge with the EEOC for that claim. Therefore, the retaliation claim was not time-barred by the 45–day filing limitation.

The Prayer for Relief in plaintiff's complaint requests $750,000 each in compensatory and punitive damages. including, but not limited to, emotional distress and humiliation, and liquidated damages for lost past and future income and other losses.

■ Punitive damages are not available under Title VII. 42 U.S.C. S 1981a(b)(1) (prohibiting awards of punitive damages against the federal government); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313–15 (2d Cir.1995) (holding that "individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII" and stating that "it appears that Congress contemplated that only employer-entities could be held liable for compensatory and punitive damages" under Title VII).

■ Plaintiff also seeks liquidated damages for back pay under the ADEA. Such damages are expressly authorized for willful violations of the ADEA. 29 U.S.C. S 626(b). Defendants argue that such damages are not available against a federal employer such as the Department of Labor.

Although 29 U.S.C. § 626(b) allows for liquidated damages, there is no mention of liquidated damages in § 633(a), the self-contained section of the ADEA applicable to federal employees. The court concludes that § 633(a) applies to the Department of Labor as a federal employer and represents a limitation on the waiver of its sovereign immunity. Thus, § 626(b) does not apply to the Department of Labor, and liquidated damages are not available. *Smith v. Office of Personnel Management*, 778 F.2d 258, 263 (5th Cir.1985) ("Liquidated damages are permitted only in private sector cases in which the employer's conduct is willful."), cert. denied, 476 U.S. 1105, 106 S.Ct. 1949, 90 L.Ed.2d 358 (1986); See also, *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 125, 105 S.Ct. 613, 623, 83 L.Ed.2d 523 (1985)("[t]he legislative history of the ADEA indicates that Congress intended liquidated damages to be punitive in nature,"); *McGinty v. New York*, 193 F.3d 64, 70–71 (2d Cir. 1999)(the ADEA's added liquidated damages may fairly be characterized as punitive in nature because they are designed to deter willful violations of the ADEA rather than compensate the victim, they do after all provide an ADEA victim with more than his or her out-of-pocket damages or any other strictly compensatory amounts).

■ Under Title VII, in intentional cases of discrimination, a court may also award a sum of money as compensation for "emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." 42 U.S.C. § 1981a(b)(3). However, Title VII imposes a cap on the maximum compensatory award that a plaintiff can recover which is based on the size of the employer's staff. Since the Department of Labor had more than 500 employees, Title VII places a cap

of $300,000 on its compensatory damages. § 1981a(b)(3)(D). Plaintiff's claims for damages are over the statutory maximum. These statutory caps on damages apply to each party in an action, not to each claim, and there is nothing in the language of the statute to indicate otherwise. *Muller v. Costello,* 997 F.Supp. 299, 303 (N.D.N.Y. 1998), aff'd, 187 F.3d 298 (2d Cir.1999). Plaintiff's opposition papers indicate that he is aware of the monetary damage limitations set forth in the statute.

 Code of Federal Regulations ("C.F.R") § 1614.407(a) states that "[w]hen an agency, or the Commission, is an individual case of discrimination, finds that an applicant or employee has been discriminated against, the agency shall provide full relief." At the conclusion of plaintiff's administrative hearing, the AJ found that plaintiff had been discriminated against on the basis of gender and age when he had not been selected for the higher position he had applied for. The AJ then ordered that the following remedial actions be taken: plaintiff is to receive $25,000 in non-pecuniary damages, back pay with interest, and other benefits due him pursuant to 29 C.F.R. § 1614.501, attorney's fees and costs, including medical expert's testimony, and pecuniary expenses resulting from his non-selection. Plaintiff's appeal did not include the discriminatory non-selection finding of the AJ's decision or its remedies. The appeal focused on the denial of his retaliation and constructive discharge claims. After plaintiff's appeal was denied, the agency fully complied with the ordered remedies. Since plaintiff has received full relief on his claims of gender and age discrimination, those claims will not be further considered by the court.

Accordingly, the following portions of defendants' motion for summary judgment are **GRANTED**, dismissing John L. Hen-shaw and Patricia K. Clark as party defendants; Counts V, VI, VII, VIII and IX of the complaint; and those parts of Counts II, Count III and IV that allege age and/or gender discrimination and/or other statutory, tort and state law claims. Defendants' motion to dismiss plaintiff's retaliation and constructive discharge claims is **DENIED**, as are the remaining portions of defendants' summary judgment motion; the motions brought under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) are denied in their entirety.

**IT IS SO ORDERED.**