Nancy L. SHEN, Plaintiff,

v.

BIOGEN IDEC INC., Defendant.

Civil Action No. 05–12362–JLT.

United States District Court,
D. Massachusetts.

Nov. 19, 2007.

Robert O. Berger, III, Law Office of Robert O. Berger, Boston, MA, for Plaintiff.

Jonathan D. Rosenfeld, Julie Murphy Clinton, Stephanie Smith, WilmerHale LLP, Boston, MA, for Defendant.

*MEMORANDUM & ORDER*

JOSEPH L. TAURO, District Judge.

## I. INTRODUCTION

This is an employment discrimination case in which Plaintiff Nancy L. Shen ("Shen") asserts that she was wrongfully terminated by Defendant Biogen Idec Inc. ("Biogen") in violation of federal and state anti-discrimination statutes. Plaintiff advances three claims: (1) breach of contract or implied covenant of good faith and dealing; (2) discrimination based on age, gender, race or national origin; and (3) deceit or misrepresentation. Defendant proffers a counterclaim based on Plaintiff's alleged violation of the Parties' relocation agreement.

Defendant has moved for summary judgment on all three claims. For the following reasons, this court ALLOWS Defendant's *Motion for Summary Judgment* [# 29]. Defendant's counterclaim, however, implicates no issue of federal law, and this court declines to exercise jurisdiction.

## II. FACTUAL BACKGROUND

A court may grant summary judgment only when the moving party has shown that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[1] The court must examine the facts in the light most favorable to the non-moving party, and resolve any reasonable inference in that party's favor.[2] Accordingly, the following factual record is presented in the light most favorable to the Plaintiff.

Plaintiff served as the Associate Director of Quality Assurance for Biogen from July 26, 2004 to January 4, 2005. In this position, she was responsible for overseeing the contract manufacturing organizations that manufacture drugs on behalf of Biogen. According to the job description, this post included a number of discrete tasks including, *inter alia*, leading a team of specialists to ensure quality control; assessing formal investigations on process deviations; evaluating processing conditions in response to technical product complaints; and participating in regulatory inspections.[3]

In early 2004, Plaintiff interviewed for the position with, among others, Aria Tavana ("Tavana"), then the Director of Quality Assurance and Quality Control. During one interview, Shen claims a Biogen manager assured her the job would be a "long-term full-time position."[4] But, in

---

1. Fed.R.Civ.P. 56(c).

2. *Dasey v. Anderson*, 304 F.3d 148, 153 (1st Cir.2002).

3. Position Description for Associate Director of Quality, Appendix to Defendant's Motion for Summary Judgment, Ex. 1.

4. Compl. ¶ 7.

her employment contract, which Plaintiff signed on July 19, 2004, the language is clear: "Biogen Idec is an at-will employer. This means that just as you may resign your employment at any time for any reason, Biogen Idec may terminate your employment at any time at its sole discretion." [5]

Shen also claims Biogen offered a full relocation package that included moving expenses, as well as financial assistance in both selling her previous home in San Diego, and purchasing a new home in Massachusetts.[6] On June 21, 2004, Shen signed a "Relocation Agreement" to cover certain expenses incurred in moving from California to Massachusetts.[7] One condition of this agreement states "If ... Biogen Idec terminates my employment for cause or poor performance, repayment will be required according to the following schedule: (i) if my employment terminates on or before the first anniversary of my date of hire, the full dollar amount of the relocation package." [8] Shen claims the actual relocation expenses totaled $39,443.[9]

During her five months at Biogen, Shen reported to Tavana. He was not pleased with her performance.[10] Despite weekly meetings with Tavana to discuss her job performance, Shen showed no signs of improving. Concerned by her lack of progress, Tavana wrote a memorandum ("Tavana Memorandum") to his superior, Susan Janosky, on November 9, 2004. It listed three areas in which Shen failed to meet Tavana's expectations: operational leadership, strategic leadership, and impact on the organization.[11] It also mentions that feedback from her peers "has been primarily negative." [12] In his conclusion, Tavana recommended Shen's termination.

At Tavana's request, Shen prepared a written assessment of her own performance at Biogen, dated November 15, 2004. Shen wrote that she "appreciate[d] [Tavana's] encouragement, guidance and support greatly." [13] She also felt that her colleagues "have treated me, a newly joined member, very kindly." [14] In her list of contributions to the company, Shen noted seven accomplishments. These included performing due diligence at the Nektar corporation,[15] an event which apparently caused Biogen some embarrassment; [16]

5. Offer Letter to Nancy Shen from William Cogswell dated June 18, 2004, Appendix to Defendant's Motion for Summary Judgment, Ex. 2.

6. *Id.* at ¶ 8.

7. Biogen Idec Relocation Agreement dated June 21, 2004 and signed by Nancy L. Shen, Appendix to Defendant's Motion for Summary Judgment, Ex. 3.

8. *Id.*

9. Shen Dep. 166.

10. Memorandum from Aria Tavana ("Aria Memorandum") to Susan Janosky dated November 9, 2004, p. 1, Appendix to Defendant's Motion for Summary Judgment, Ex. 12 (noting Shen's "performance has not met the expectations of an Associate Director").

11. *Id.*

12. *Id.*

13. Self-assessment Memorandum ("Self-assessment Memorandum") dated November 15, 2004 by Nancy Shen and Addressed to Aria Tavana, p. 1, Appendix to Defendant's Motion for Summary Judgment, Ex. 10.

14. *Id.*

15. *Id.* at 2.

16. During this meeting with a potential client, Shen apparently asked a question about basic international guidelines universally known in the pharmaceutical industry. A colleague noted that the question itself suggested Shen was ignorant of a basic industry standard, and "put Biogen in a bad light." Hudd Dep. ¶ 2.

participating in a quarterly meeting at Cardinal Health;[17] and more ministerial tasks such as reorganizing the archive room and preparing a table of "quality documents."[18]

In her deposition, however, Shen painted a very different portrait of her workplace environment. According to her deposition testimony, Shen testified that Tavana purportedly said, "You know, people here don't like you."[19] Additionally, Shen alleged that Tavana told her, "People don't like you here. You have no chance, and you don't have any hopes [sic] in Biogen Idec."[20] In a different formulation, Shen claimed that Tavana stated, "People don't like you [sic] kind here. You have no chance."[21] Tavana denies having made any of these statements.[22]

On November 18, 2004, Shen, Tavana and Patrick Kelly, Associate Director of Human Resources, met to discuss Shen's performance. Tavana explained to Shen his concerns about her inadequate performance, and that she would be terminated at the end of the year.[23] Thereafter, Shen applied to transfer to another position in the company, but her application was denied. On January 5, 2005, Shen was terminated.

Then, Shen filed a claim against Biogen with both the United States Equal Employment Opportunity Commission, and the Massachusetts Commission Against Discrimination. Neither organization concluded that Biogen had violated the applicable anti-discrimination statutes.[24] On November 23, 2005, Shen filed the instant lawsuit.

## III. DISCUSSION

Plaintiff makes three claims against Biogen: (1) breach of contract or implied covenant of good faith and dealing; (2) discrimination based on age, race, or national origin; and (3) deceit or misrepresentation. For the following reasons, this court ALLOWS Defendant's *Motion for Summary Judgment* [# 29] on all three counts.

### A. Breach of Contract or Implied Covenant of Good Faith

For purposes of this analysis, the court divides Plaintiff's claims into two parts: breach of contract, and breach of the implied covenant of good faith in terminating Plaintiff.

#### 1. Breach of Contract

■ Plaintiff's employment contract is at-will. In the contract, Defendant explicitly reserved the right to "terminate [Plaintiff's] employment at any time at [Defendant's] sole discretion."[25] Massachusetts law allows either party to terminate an at-will employment contract without reason.[26] As will be shown below, Biogen had ample reason to terminate Shen. But, even if it did not, Biogen could

---

17. Self-assessment Memorandum, p. 3.

18. *Id.*

19. Shen Dep. 139.

20. *Id.* at 151.

21. *Id.*

22. Tavana Dep. 6.

23. *See* Shen Dep. at 150.

24. *See* Appendix to Defendant's Motion for Summary Judgment, Exs. 9 & 10.

25. Offer Letter to Nancy Shen from William Cogswell dated June 18, 2004, Appendix to Defendant's Motion for Summary Judgment, Ex. 2.

26. *See Ford v. American Airlines, Inc.,* 1991 WL 311900, **1–2, 1991 U.S. Dist. LEXIS 19403, at *3 (D.Mass. July 29, 1991).

terminate Shen at any time according to the express terms of the contract.

■ Plaintiff argues that, during her interview, a Biogen manager made oral representations that this would be a "long-term" position. But, even if that were true, spoken guarantees of longterm employment cannot transform at-will employment into a contract for a term.[27] The terms of her contract were clear; oral blandishments cannot override textual certainties.

### 2. Breach of the Implied Covenant of Good Faith and Fair Dealing

■ Massachusetts recognizes an implied covenant of good faith and fair dealing in at-will employment contracts.[28] To make out a claim of bad faith termination, a plaintiff must show that defendant either (1) intended to benefit financially at plaintiff's expense; or (2) terminated plaintiff in violation of a clearly established public policy.[29] Since Plaintiff makes no mention of public policy, this court treats her claim under the first prong only.

■ Plaintiff claims that Defendant terminated her so as not to pay her relocation expenses. Under Massachusetts law, an employer may not discharge an employee in order to avoid the payment of commissions or to reap for itself financial benefits due to the employee.[30] Specifically, an employer may not deprive "the employee

of money that he had fairly earned and legitimately expected."[31]

■ Under the express terms of the Relocation Agreement, Plaintiff would have to pay back the moving expenses, in full, if she were terminated for cause or poor performance within one year of her start date. Her employment began on July 19, 2004. The legitimate expectation, therefore, is that if Shen were not terminated for cause or poor performance by July 19, 2005, she would not have to repay the relocation expenses.

Shen was terminated more than six months *before* her right to relocation expenses would have vested. In the typical case, the plaintiff is discharged on the eve of receiving a large bonus or commission for services rendered.[32] When terminated, Shen still had to work for another six months before she could legitimately expect to receive her moving expenses. Moreover, she adduces no evidence that Defendant terminated her to keep the moving expenses. Without evidence, conclusory allegations and unsubstantiated legal theories cannot demonstrate the existence of an issue of fact for the purposes of summary judgment.[33]

### B. Discrimination Based on Age, National Origin, or Race

■ *Plaintiff's discrimination claim alleges violations of Massachusetts labor*

27. *Id.*, 1991 WL 311900, *2, 1991 U.S. Dist. LEXIS 19403 at *4.

28. *See Treadwell v. John Hancock Mut. Life Ins. Co.*, 666 F.Supp. 278, 281 (D.Mass.1987).

29. *See Strahm v. WSI Corp.*, 1993 WL 540566, **6–7, 1993 U.S. Dist. LEXIS 19166, at *19–20 (D.Mass. May 3, 1993).

30. *Maddaloni v. Western Mass. Bus Lines, Inc.*, 386 Mass. 877, 884, 438 N.E.2d 351 (Mass.1982).

31. *Id.*

32. *See id.* at 882, 438 N.E.2d 351 (employee discharged after his commissions became payable, but before they were actually paid); *Fortune v. National Cash Register Co.*, 373 Mass. 96, 105, 364 N.E.2d 1251 (Mass.1977) (employer terminated employee after twenty-five years of service one business day after employee obtained a five million dollar order on which employer would have had to pay bonus).

33. *Magee v. United States*, 121 F.3d 1, 3 (1st Cir.1997).

law, federal civil rights law, and federal age discrimination law.[34] For all claims, however, Massachusetts courts apply the Supreme Court's *McDonnell Douglas* burden-shifting analysis.[35] This analysis proceeds in three stages. In the first stage, the employee must make a quadripartite showing that: (1) she belongs to a protected class; (2) she performed her job at an acceptable level; (3) she was terminated; and (4) the employer had a continuing need for the services that she was providing.[36] If the employee succeeds at this stage, the burden of production shifts to the employer.

■ In the second stage, the employer can rebut employee's prima facie showing by providing a "lawful reason or reasons for its employment decision," and adducing credible evidence therefor.[37] If the employer succeeds here, the analysis proceeds to the third stage.

■ In the third stage, the employee must show that the reason for the employer's decision was pretextual. "At summary judgment, this question reduces to whether or not the plaintiff has adduced minimally sufficient evidence to permit a reasonable factfinder to conclude that [plaintiff] was fired because of [discrimination]." [38]

■ On this factual record, Plaintiff can barely make out a prima facie case of discrimination. While the first, third, and fourth of the four prongs are satisfied, Plaintiff provides scant evidence to satisfy the second prong, namely, that her job performance was adequate. Her self-assessment provides evidence that she did some work while employed at Biogen, though probably not enough to rise to the level of "acceptable." Since credibility determinations are not appropriate at summary judgment,[39] however, this court passes to the next stage of the analysis.

■ At the second stage, Defendant adduces credible evidence for its termination decision. Tavana's memorandum abounds with reasons to terminate Shen. Affidavits submitted from colleagues at Biogen likewise buttress the decision. Stephen Hudd testified that Shen's question at the Nektar meeting "put Biogen in a bad light with our potential partner" and "demonstrated her lack of knowledge of something so basic and important to the situation." [40] William Rogers likewise testified that, although he had extensively trained Shen on operating procedures, he "did not believe that she had picked up the basics and fundamental principles." [41] And even after additional training, Shen was still "not comfortable performing that

---

34. *See* Mass. Gen. Laws ch. 151B, § 4 (2007), 42 U.S.C. § 2000e *et seq.*, 29 U.S.C.S. § 621 *et seq.*

35. *See Bennett v. St–Gobain Corp.,* 507 F.3d 23, 30 (1st Cir.2007) (applying *McDonnell Douglas* framework in age discrimination case); *Abramian v. President & Fellows of Harvard College,* 432 Mass. 107, 731 N.E.2d 1075, 1084 (2000) (applying *McDonnell Douglas* framework in national origin discrimination case), *McKenzie v. Brigham & Women's Hospital,* 405 Mass. 432, 434–35, 541 N.E.2d 325 (Mass.1989) (applying *McDonnell Douglas* framework in racial discrimination case).

36. *Bennett,* 507 F.3d at 30–31.

37. *Abramian,* 432 Mass. at 116, 731 N.E.2d 1075.

38. *Davila v. Corporacion De P.R. Para La Difusion Publica,* 498 F.3d 9, 16 (1st Cir.2007).

39. *Simas v. First Citizens' Fed. Credit Union,* 170 F.3d 37, 49 (1st Cir.1997).

40. Hudd Aff. ¶ 3.

41. Rogers Aff. ¶ 2.

task."[42] This suffices to shift the burden back to Plaintiff.

■ Plaintiff must now show that Defendant's reason for terminating her was pretextual. "When assessing a claim of pretext in an employment discrimination case, a court's focus is necessarily on the motivations and perceptions of the decisionmaker."[43] In other words, it suffices that Biogen believed Shen's performance was unsatisfactory; courts cannot second-guess the wisdom of a company's employment decisions. Since Biogen offers ample evidence in this regard, and Shen presents none to the contrary, this court has no basis to think the reason for termination was pretextual.

■ Nevertheless, Plaintiff cites a number of statements made by Tavana that, she believes, evince workplace hostility. Even assuming Tavana made such statements, which he denies, this court does not believe they evince discrimination. There is one statement, however, that requires further analysis. During her deposition, Shen repeatedly testified that Tavana said "People don't like you here." In one particular configuration of that statement, Shen testified that Tavana said "People don't like you [sic] kind here."

It is not clear what "kind" Tavana had in mind when he allegedly made this statement. Reading the record in the light most favorable to the Plaintiff, it is possible to interpret this as a discriminatory statement against Asian–Americans. Even if that were the case, however, this remark would violate neither federal nor state law.

■ With respect to federal law, the Supreme Court requires more than merely offensive conduct to find a violation.[44] As the Court has repeatedly held, the "mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee" does not violate federal law.[45] Rather, anti-discrimination statutes are violated only when "the workplace is permeated with 'discriminatory intimidation, ridicule and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' "[46] One dubiously racist comment, assuming it was made, cannot suffice to permeate the workplace with the abuse required by the Supreme Court.

■ Likewise, Massachusetts state law would not find discriminatory animus through a single event. Though "theoretically possible" to prove discrimination based on a single act,[47] the Massachusetts discrimination statute targets a "work environment pervaded by abuse and harassment."[48] Indeed, sporadic statements, even if offensive, "cannot demonstrate the level of pervasiveness and severity necessary to establish a claim" under the anti-discrimination statute.[49] The central in-

**42.** *Id.*

**43.** *Davila,* 498 F.3d at 16.

**44.** *Harris v. Forklift Sys.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

**45.** *See id.; Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

**46.** *Harris,* 510 U.S. at 21, 114 S.Ct. 367 (citations omitted).

**47.** *Burke v. Chatbar, Inc.,* 18 Mass. L. Rep. 665 at * 15, 2004 WL 3218001 (Mass.Super.Ct.2004).

**48.** *College–Town, Div. of Interco, Inc. v. Mass. Comm'n Against Discrimination,* 400 Mass. 156, 162, 508 N.E.2d 587 (Mass.1987).

**49.** *Daigle v. Necx, Inc.,* 13 Mass. L. Rep. 462 at * 13, 2001 WL 1199868 (Mass.Super.Ct.2001).

quiry is "whether the conduct was repeated often enough to a point that it became ... a condition of the employment."[50] As with the federal analysis, therefore, the state law analysis also does not permit a finding of discrimination.

## C. Deceit or Misrepresentation

 Plaintiff's final claim fares no better than her previous two. This claim essentially recycles the contents of her first claim, namely, that Shen "detrimentally relied on the deceitful and/or negligent or willful misrepresentation of Biogen," left her job in California, and moved to Boston.[51] For reasons discussed above, however, this claim must also fail. Whatever may have been said to Shen, the explicit terms of her written contract stated that she could be terminated at the company's sole discretion. It may be unfortunate that Biogen elected to terminate her at such an early stage, but it is not illegal.

## IV. CONCLUSION

 For reasons stated above, Defendant's Motion for Summary Judgment is ALLOWED. Having dismissed Plaintiff's federal claim, this court declines to exercise supplemental jurisdiction over Defendant's state law counterclaim.[52] The counterclaim is hereby DISMISSED.

IT IS SO ORDERED.

---

50. *Id.* at 12 (citations omitted).

51. Compl. ¶ 27.

52. *See* Fed.R.Civ.P. 12(b)(1).

\* This action was originally brought against Kathleen Dennehy personally and in her offi-